550 So.2d 406 (1989)
Barry Charles SMITH
v.
STATE of Mississippi.
No. 07-58639.
Supreme Court of Mississippi.
October 11, 1989.
John L. Hatcher, Cleveland, Miss., for appellant.
Edwin Lloyd Pittman, and Mike C. Moore, Attys. Gen., Jackson, John R. Henry, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J. and PRATHER and ROBERTSON, JJ.
DAN M. LEE, Presiding Justice, for the Court:
This appeal is from the Circuit Court of Bolivar County, wherein the appellant was tried and convicted of aggravated assault and carrying a concealed weapon, and was sentenced as an habitual criminal to a total term of twenty-five years imprisonment, without benefit of probation or parole. Because we find that the appellant was denied his constitutional right to a speedy trial, we reverse.

STATEMENT OF THE FACTS
On the afternoon of May 20, 1986, the appellant Barry Charles Smith went to a pool hall in Cleveland, Mississippi, where he and Eddie "Bubba" Sanders engaged in shooting pool. An argument ensued between the two men, and Smith started to leave. As he reached the door, Smith fired a .25 caliber automatic pistol toward Sanders. The bullet missed Sanders and hit a soft drink machine. Sanders ran out of the building, followed by Smith. Smith did not fire at Sanders again. Sanders then went to the Cleveland Police Department, where he filed an affidavit against Smith for simple assault. A warrant was issued for Smith's arrest, and later that afternoon he was taken into custody. When officers searched Smith, they found the pistol concealed in his right sock. Smith was then *407 charged with carrying a concealed weapon, in addition to the charge of simple assault.
At the time of the shooting incident, Smith was on parole, having served four and one-half years of an eighteen-year sentence for a 1979 aggravated assault conviction. Following his arrest on May 20, 1986, Smith was incarcerated in the Bolivar County jail without bond and then returned to Parchman penitentiary. However, a parole revocation hearing was not held until May 18, 1987.
On April 1, 1986, less than two months prior to the shooting incident, Smith had purchased the .25 caliber pistol from a pawn shop in Cleveland, Mississippi. In purchasing the pistol, Smith knowingly made a false statement on Treasury Department Form No. 4473, in which he denied, by sworn statement, that he had ever been convicted of a felony.
On September 19, 1986, Smith was indicted by a federal grand jury on one count of making a false statement in the acquisition of a firearm, and on one count of unlawfully possessing a firearm.
On October 22, 1986, Smith was indicted by the Bolivar County Grand Jury on charges of aggravated assault and carrying a concealed weapon. Neither of the indictments charged Smith under Mississippi's Habitual Offender Statute, Miss. Code Ann. § 99-19-81 (Supp. 1986 & 1988), nor could they have, since at that time Smith had only one prior conviction.
On February 23, 1987, Smith was convicted, on a plea of guilty, in U.S. District Court for the Northern District of Mississippi on the charge of making a false statement in the acquisition of a firearm. He was sentenced to four years imprisonment. The other federal charge was dismissed.
Thereafter, the prosecution resubmitted the two state charges to the Bolivar County Grand Jury. On April 21, 1987, the Grand Jury re-indicted Smith on the charges of aggravated assault and carrying a concealed weapon. The new indictments, however, charged Smith as an habitual offender under Miss. Code Ann. § 99-19-81 (Supp. 1986 & 1988). The two convictions on which habitual offender status was based were the 1979 conviction for aggravated assault and the February, 1987 conviction on the federal charge of making a false statement in the acquisition of a firearm.
Smith was arraigned on May 18, 1987. On May 20, 1987, Smith filed a motion to quash the habitual offender portion of the indictments. The motion alleged that the State had knowingly delayed Smith's trial from the scheduled date of December 3, 1986, until after his conviction in federal court, in order to re-indict under the habitual offender statute. According to Smith, this delay had the result of denying him a speedy trial. The motion further alleged that the State, having committed itself to an indictment without habitual offender charges, could not re-indict for the sole purpose of adding the habitual offender charges, especially since the case had been continued at the instance of the prosecution. Hearing on the motion was postponed until after the trial.
After a three-day trial which began May 25, 1987, Smith was convicted on both the charge of aggravated assault and that of carrying a concealed weapon. A bifurcated hearing was held on June 8, 1987. At this hearing, the trial judge denied Smith's motion to quash the habitual offender portion of the indictments, ruling that the re-indictment was proper. Pursuant to section 99-19-81, Smith was sentenced to the maximum term of imprisonment prescribed for each felony: twenty years on the aggravated assault conviction, and five years on the conviction for carrying a concealed weapon, with the provisions that the sentences would be served consecutively to any other sentences previously imposed, that neither of the sentences could be reduced or suspended, and that Smith would be ineligible for parole or probation.
From these convictions and sentences, Smith has perfected an appeal to this Court. Although Smith assigns numerous errors in the trial proceedings, only one assignment of error requires discussion.

WAS SMITH DENIED HIS RIGHT TO A SPEEDY TRIAL?
Our speedy trial statute, Miss. Code Ann. § 99-17-1 (Supp. 1986 & 1988), provides:

*408 Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned.
In the instant case, arraignment on the two state charges occurred on May 18, 1987. Trial began on May 25, 1987, only seven days later. Obviously, there was no violation of section 99-17-1. This Court has made it clear, however, that compliance with section 99-17-1 does not necessarily mean that a defendant's constitutional right to a speedy trial has been respected. Bailey v. State, 463 So.2d 1059, 1062 (Miss. 1985); Perry v. State, 419 So.2d 194 (Miss. 1982). In Perry v. State, supra, 419 So.2d at 198, this Court stated that the constitutional right to a speedy trial, unlike the statutory right under section 99-17-1, attaches at the time of a formal indictment or information, or when a person has been arrested. In short, the constitutional right to a speedy trial attaches when a person has been accused. Beavers v. State, 498 So.2d 788, 789-90 (Miss. 1986); Bailey v. State, supra, 463 So.2d at 1062. Smith's right to a speedy trial attached, then, on May 20, 1986, the date of his arrest.
Where a defendant's constitutional right to a speedy trial has attached, the balancing test set out in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), must be applied to determine whether that right has been denied. The Barker Court identified four factors which are to be considered in making such a determination: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant has asserted his right to a speedy trial; and (4) whether the defendant has been prejudiced by the delay. No one of these factors is, in itself, dispositive. Rather, they must be considered together, in light of all the circumstances. Barker, 407 U.S. at 533, 92 S.Ct. at 2193.

Length of Delay
This factor, according to the Barker court, "is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." Barker, 407 U.S. at 530, 92 S.Ct. at 2191.
What length of time must elapse before prejudice will be presumed? While there are some exceptions to the rule, "it may generally be said that `any delay of eight months or longer is "presumptively prejudicial."'" 2 W. LeFave and J. Israel, Criminal Procedure § 18.2 (1984), quoting Joseph, Speedy Trial Rights in Application, 48 Fordham L.Rev. 611, 623 n. 71 (1980). In Bailey v. State, supra, 463 So.2d at 1062, this Court found a delay of 298 days to be a substantial enough period of time to require a balancing of all the Barker factors. In Beavers v. State, supra, 498 So.2d at 790, this Court found that a delay of 423 days was sufficient to require reversal "in the absence of the other Barker factors pointing in favor of the prosecution (or in the absence of the defendant's position on the other Barker factors being weak)." See United States v. Greer, 655 F.2d 51, 53 (5th Cir.1981) (delay of 357 days is long enough to trigger the requirement of inquiry into the other Barker factors). See also Blake v. Katter, 693 F.2d 677, 681-82 (7th Cir.1982) (seven months' delay is enough to warrant an inquiry into the remaining Barker factors).
In the instant case, Smith was arrested on May 20, 1986, and his trial began on May 25, 1987, 370 days later. Although this delay of more than one year is not enough, by itself, to establish that Smith's right to a speedy trial was violated, it is enough to warrant a close examination of the other Barker factors.

Reason for the Delay
Smith contends that the reason for the delay was that the State wanted to wait until he was convicted on the federal charge so that he could be re-indicted as an habitual offender. The reason for the delay is not apparent from the record, however.
*409 In Perry v. State, supra, this Court stated:
In the case at bar, the prosecution provided no excuse for this delay. Where the defendant has not caused the delay, and where the prosecution has declined to show good cause for the delay, we must weigh this factor against the prosecution. It is the burden of the state to see that a defendant receives a speedy trial.
419 So.2d at 199. Accord Vickery v. State, 535 So.2d 1371, 1375 (Miss. 1988); Beavers v. State, supra, 498 So.2d at 791; Bailey v. State, supra, 463 So.2d at 1062. See also Burgess v. State, 473 So.2d 432 (Miss. 1985).
Because in the instant case the State failed to show good cause for the delay in bringing Smith to trial, this factor weighs in Smith's favor.

Defendant's Assertion of His Right to a Speedy Trial
In Smith's motion filed on May 20, 1987, five days before trial, he alleged that the State had denied him a speedy trial in order to re-indict him as an habitual offender. While Smith's failure to assert his right to a speedy trial prior to this time weighs against him, it is by no means fatal to his claim that he was denied a speedy trial. Instead, it is only one factor to be considered in the Barker balancing test. Barker, 407 U.S. at 533, 92 S.Ct. at 2193.

Prejudice to the Defendant
Had Smith been tried prior to February 23, 1987 (which date, incidentally, was 279 days after Smith's arrest), he could not have been sentenced as an habitual offender. Quite possibly, he would not have received the maximum sentence on the two charges. Because he was sentenced as an habitual offender, he lost the opportunity for probation and parole. Without doubt, Smith was severely prejudiced by the delay in trial.

CONCLUSION
We have frequently rejected a defendant's claim that he was denied a speedy trial, when the length of delay equalled or exceeded the delay in the instant case. Where that has happened, however, the defendant's showing on the other Barker factors was weak. In almost every instance, the defendant failed to show that he was prejudiced by the delay. See, e.g., Williamson v. State, 512 So.2d 868 (Miss. 1987); Kinzey v. State, 498 So.2d 814 (Miss. 1986); Lightsey v. State, 493 So.2d 375 (1986); Carlisle v. State, 393 So.2d 1312 (1981).
The only Barker factor which weighs against Smith is that he did not assert his right to a speedy trial until five days before trial began. All the other Barker factors weigh in his favor. Based upon a balancing of the four Barker factors, we hold that Smith was denied his constitutional right to a speedy trial.
Of course, the sole remedy for denial of a defendant's right to a speedy trial is dismissal of the charges against him. Perry v. State, supra, 419 So.2d at 197 (citing Strunk v. United States, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973). Smith's convictions on the charges of aggravated assault and carrying a concealed weapon are therefore reversed, the sentences on those charges are vacated, and the charges are dismissed with prejudice.
In the usual case, a determination such as this would result in the discharge of the defendant. In the instant case, however, the defendant, his parole having been revoked, will continue to serve the remaining 14 years of the 18-year sentence imposed for his previous aggravated assault conviction. On completion of that sentence, he must still serve the four-year sentence on the federal charge.
REVERSED AND RENDERED.
HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN and BLASS, JJ., concur.
ROY NOBLE LEE, C.J., and ANDERSON, J., dissent by separate written opinion.
*410 PITTMAN, J., not participating.
ROY NOBLE LEE, Chief Justice, dissenting:
On April 21, 1987, Smith was reindicted by the grand jury of Bolivar County, Mississippi, on charges of aggravated assault and carrying a concealed weapon and as an habitual offender. He was arraigned May 18, 1987, and trial began on May 25, 1987. Mississippi Code Annotated § 99-17-1 (Supp. 1986 and 1988), which provides the 270-day rule for trial in criminal cases, is not applicable here. Smith did not ask for, or assert, his right to, a speedy trial until May 20, 1987.
Three hundred seventy days elapsed from May 20, 1986, the date of Smith's arrest, until May 25, 1987, the date his trial commenced. In my opinion, Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) does not require that this case be reversed on the speedy trial issue. On the contrary, I am of the opinion that Barker v. Wingo supports affirmance of the judgment entered in the lower court.
The real reason for reversal of the conviction of Smith is at page 409 of the majority opinion, where the Court said:
Had Smith been tried prior to February 23, 1987, (which date, incidentally, was 279 days after Smith's arrest), he could not have been sentenced as an habitual offender. Quite possibly, he would not have received the maximum sentence on the two charges. Because he was sentenced as an habitual offender, he lost the opportunity for probation and parole. Without doubt, Smith was severely prejudiced by the delay in trial.
In my opinion, the above reason is not a valid one for reversing the judgment of the lower court and is not mandated by Barker v. Wingo, supra. Therefore, I dissent from the majority opinion.
ANDERSON, J., joins this dissent.