798 So.2d 584 (2001)
Mark Anthony SMILEY, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-KA-00261-COA.
Court of Appeals of Mississippi.
July 17, 2001.
Rehearing Denied October 23, 2001.
*586 Chester D. Nicholson, Gulfport, Gail D. Nicholson, Attorneys for Appellant.
Office of the Attorney General by Charles W. Maris Jr., Jackson, Attorney for Appellee.
BEFORE KING, P.J., PAYNE, THOMAS, and MYERS, JJ.
THOMAS, J., for the Court:
¶ 1. Mark Anthony Smiley appeals his conviction for kidnapping, raising the following issues as error:
I. WHETHER SMILEY'S SIXTH AMENDMENT RIGHT TO A SPEEDY TRIAL AS WELL AS HIS STATUTORY RIGHT PURSUANT TO MISSISSIPPI CODE ANNOTATED § 99-17-1 WERE VIOLATED BY THE STATE OF MISSISSIPPI?
II. WHETHER STATE'S EVIDENCE WAS SUFFICIENT TO SUSTAIN A CONVICTION OF KIDNAPPING UNDER MISSISSIPPI CODE ANNOTATED § 97-3-53?
III. WHETHER THE JURY INSTRUCTIONS WERE INADEQUATE TO DEFINE THE CRIME OF KIDNAPPING AND WAS THE STATEMENT BY THE PROSECUTOR IN CLOSING IMPROPER?
IV. WAS THE SENTENCE OF THE TRIAL JUDGE ILLEGAL IN CONTRAVENTION OF MISSISSIPPI CODE ANNOTATED § 99-19-23?
Finding no error, we affirm.

FACTS
¶ 2. On the night of November 25, 1996, Mark Anthony Smiley went to the home of his ex-wife Sandy Coleman. Coleman resides at her home with her boyfriend Keith Albright, her daughter, and his two daughters. Coleman heard a noise at the front door and went to investigate. When she opened the door, Smiley was standing there dressed in camouflage and holding a shotgun. Coleman grabbed the shotgun and struggled with Smiley. Smiley fended off Coleman's efforts and then grabbed her by the hair and pulled her into the house. Albright, realizing that it was Smiley outside, got the children out of the area and called 911 to report that a man with a shotgun was trying to get into the house. Smiley confronted Albright and demanded to know if Albright was armed or if he had called the police. Albright told Smiley that he had not called the police.
¶ 3. Smiley informed Coleman and Albright that he was going to take Coleman's car because Coleman owed him money from his last military check. Coleman stated that Smiley felt she owed him this money due to the fact that she had put his check into her account at the time of their divorce. Smiley sat down and kept the shotgun either in his hand or close by as he smoked a cigarette.
*587 ¶ 4. The police arrived on the scene, and Smiley allowed Coleman to go talk to the police in order to get rid of them. After Coleman went outside to talk to the police, Albright tried to persuade Smiley to escape out the back door, but Smiley refused. Lt. Doug Wells then rushed into the house where Smiley was sitting on the couch and tackled him. Smiley was arrested without further incident. In the pockets of Smiley's pants, police found a small knife, a larger knife that folded, extra shotgun shells, duct tape, and a rope.
¶ 5. Coleman later testified that while she was in the house, she did not feel free to leave. She went on to state that "the man was dressed in camouflage with gloves and a shotgun, I didn't feel that I could just get up and leave." Coleman also stated that she was terrified: "I mean, I didn't know if I was going to die that night or not." Albright testified that he was scared as well, and he knew "for a fact" that he was not free to leave.
¶ 6. On May 16, 1997, Smiley was formally indicted for two counts of kidnapping. Smiley was tried on February 22, 1999. After a trial on the merits, a guilty verdict of two counts of kidnapping was returned by the trial court. Smiley filed and presented his motion for a new trial, which was denied by the trial court. It is from this denial that Smiley now appeals.

ANALYSIS

I.

WHETHER SMILEY'S SIXTH AMENDMENT RIGHT TO A SPEEDY TRAIL AS WELL AS HIS STATUTORY RIGHT PURSUANT TO MISSISSIPPI CODE ANNOTATED § 99-17-1 WERE VIOLATED BY THE STATE OF MISSISSIPPI?
¶ 7. On appeal, Smiley asserts for the first time that his statutory speedy trial right has been impinged. "A defendant is procedurally barred from raising an objection on appeal that is different than that raised at trial." Jones v. State, 606 So.2d 1051, 1058 (Miss.1992). "A trial judge will not be found in error on a matter not presented to him for decision." Id. Smiley is procedurally barred from arguing that his statutory right to a speedy trial was violated because he did not raise this issue at the trial level.
¶ 8. Smiley was arrested and charged on November 25, 1996. He was indicted for two counts of kidnapping on May 16, 1997. Smiley's trial took place on February 22, 1999, approximately 819 days or two years and three months from the time he was arrested. Smiley did attempt to assert his constitutional right to a speedy trial; however, these motions were never ruled upon.
¶ 9. For constitutional purposes, the right to a speedy trial attaches at "time of a formal indictment or information or else the actual restraints imposed by arrest and holding to a criminal charge." Lightsey v. State, 493 So.2d 375, 378 (Miss.1986). See also Vickery v. State, 535 So.2d 1371, 1376 (Miss.1988). In Smith v. State, 550 So.2d 406 (Miss.1989), our Supreme Court held that for constitutional purposes, the right to a speedy trial attached at arrest. Id. at 408. "Once the constitutional right to a speedy trial has attached, this Court must examine the facts of the case and engage in a functional analysis of those facts in accordance with Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), to determine whether the constitutional right to a speedy trial has been denied." Handley v. State, 574 So.2d 671, 674 (Miss.1990).
¶ 10. The Barker factors are weighted and balanced in each case according to its facts. The factors that must be considered *588 are (1) length of delay, (2) reason for the delay, (3) defendant's assertion of his right to a speedy trial, and (4) prejudice resulting to the defendant. Barker, 407 U.S. at 514, 92 S.Ct. 2182. "The weight given each necessarily turns on the peculiar facts and circumstances of each case, the quality of evidence available on each factor and, in the absence of evidence, identification of the party with the risk of non-persuasion. No one factor is dispositive." Jaco v. State, 574 So.2d 625, 630 (Miss.1990).
¶ 11. If the delay is not presumptively prejudicial, the analysis goes no further. Jaco, 574 So.2d at 630. In Smith, our Supreme Court held that an eight-month delay is presumptively prejudicial. Smith, 550 So.2d at 408. In the order denying the motion to quash the indictment, the trial judge found that the twenty-three month delay from date of arrest until the date of trial was presumptively prejudicial. "This factor, alone, is insufficient for reversal, but requires a close examination of the remaining factors." Handley, 574 So.2d at 676.

1. The Length of the Delay.
¶ 12. The constitutional right to a speedy trial attaches at the time a person is arrested. Smith, 550 So.2d at 408. A delay of at least eight months is presumptively prejudicial. Jaco, 574 So.2d at 630. Twenty-seven months elapsed from the time of Smiley's arrest until his trial. We presume prejudice.
¶ 13. In Flores v. State, 574 So.2d 1314, 1322 (Miss.1990), our Supreme Court held that if an extensive delay exists prior to trial, then that delay "must be weighed heavily in favor of the defendant in the balancing test." Id. "However, the delay should not [be] conclusively weighted against the State," because the presumption of a prejudicial delay may be rebutted when balanced by the remaining factors. Herring v. State, 691 So.2d 948, 955 (Miss. 1997) (citing Wiley v. State, 582 So.2d 1008, 1012 (Miss.1991)). Having found that the length of the delay in this case is such that prejudice can be presumed, we must now look to the reasons for the delay to determine whether that presumption is effectively rebutted.

2. The Reason for the Delay.
¶ 14. Smiley contends that, even though the State and trial courts attempted to blame the death of a circuit court judge and the crowded court docket as the reason for the delay, that explanation does not fully explain the delay. Consequently, Smiley concludes that this factor must also weigh against the State. By the State's calculation, 819 days elapsed from the date of the arrest to the date of trial, and the number of days expiring between the date of arraignment and trial was approximately 540 days. The State's only argument seems to be that the bulk of the delay was due to the untimely death of the circuit court judge.
¶ 15. The Mississippi Supreme Court has held that once the delay is found to be presumptively prejudicial, "the burden shifts to the prosecutor to produce evidence justifying the delay and to persuade the trier of fact of the legitimacy of the reasons." State v. Ferguson, 576 So.2d 1252, 1254 (Miss.1991). The State's arguments lack good cause for the delay in bringing Smiley to trial. For this reason, this Court finds that this factor weighs in favor of Smiley.

3. Whether the Defendant Asserted His Right to a Speedy Trial?
¶ 16. An accused certainly is under no duty to cause his own trial. However, one of the four Barker factors will weigh in his favor if in fact he has asserted his right to a speedy trial and put the court on notice *589 of his demand. Perry v. State, 637 So.2d 871, 875 (Miss.1994).
¶ 17. Smiley argues that he asserted his right to a speedy trial and that factor favors him. The record reveals that on September 5, 1997 and on February 18, 1998, Smiley filed a pro se motion demanding a speedy trial, alleging a violation of his Sixth Amendment right to a speedy trial. Smiley also filed two motions to dismiss alleging a violation of his Sixth Amendment right to a speedy trial. However, on the day of the trial, Smiley's counsel failed to pursue a motion to dismiss the indictment for a violation of Smiley's right to a speedy trial by jury.
¶ 18. Our Mississippi Supreme Court has previously acknowledged the distinct difference between a demand for a speedy trial and a demand for dismissal for a speedy trial violation. "A demand for dismissal for violation of the right to speedy trial is not the equivalent of a demand for a speedy trial. Such a motion seeks discharge not trial." Perry v. State, 637 So.2d 871, 875 (Miss.1994); see Adams v. State, 583 So.2d 165, 170 (Miss.1991). In the case at bar, Smiley made demands for both a speedy trial and a dismissal for a speedy trial violation. We weigh this factor for Smiley.

4. Whether the Defendant Was Prejudiced by the Delay?
¶ 19. We now turn our attention to the matter of actual prejudice, if any, caused by the delay. In doing so we examine the issue from two different perspectives. First, there is a possibility of prejudice arising from the delay itself, including lost witnesses and evidence, dimmed memories, and other similar complications that affect the reliability of the fact-finding. Skaggs v. State, 676 So.2d 897, 901 (Miss.1996). Second, the defendant may suffer because of the restraints to his liberty. "[W]holly aside from possible prejudice to a defense on the merits, [delay] may `seriously interfere with the defendant's liberty, whether he is free on bail or not, and ... may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.'" Atterberry v. State, 667 So.2d 622, 627 (Miss.1995) (quoting Moore v. Arizona, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973)). That having been said, the Mississippi Supreme Court has, nevertheless, held that "[i]ncarceration alone is not enough prejudice to warrant reversal." Taylor v. State, 672 So.2d 1246, 1261 (Miss.1996).
¶ 20. Smiley has failed to demonstrate any prejudice whatsoever. Without a showing of prejudice Smiley cannot make out a claim of a due process violation. United States v. Antoine, 906 F.2d 1379, 1382 (9th Cir.1990). This factor weighs heavily against Smiley and in favor of the State. Nor do we find any argument that Smiley's defense has been curtailed or impaired because of any delay. As this Court stated in State v. Magnusen, 646 So.2d 1275, 1285 (Miss.1994), "we will not infer prejudice to the defense out of the `clear blue.'" Under the totality of the Barker factors, weighed and considered together, we hold that the balance is struck in favor of the State. There is no merit to Smiley's claim of denial of a constitutional right to a speedy trial.
¶ 21. Albeit Smiley's claim lacks merit in this particular case, we would like to take this opportunity to chastise the State for this duration in the absence of good cause. We observe the State's failure to bring Smiley to trial in a timely manner. Notably absent here is a good cause for not doing so. Also disconcerting to us is that this type of delay would occur when a public defender is funded and appointed by *590 our state to represent the defendant. Furthermore, we find it troubling that a petitioner would have the opportunity to bring a due process claim when a public defender is provided for by our state.

II.

WHETHER STATE'S EVIDENCE SUFFICIENT TO SUSTAIN A CONVICTION OF KIDNAPPING UNDER MISSISSIPPI CODE ANNOTATED § 97-3-53?
¶ 22. Smiley argues that the State's evidence was insufficient to support his conviction for kidnapping. Such a challenge to the State's proof raises the issue of the sufficiency of the evidence of guilt. The trial court, in considering the issue, is charged to view all of the evidence before the court in the light most favorable to the prosecution. McClain v. State, 625 So.2d 774, 778 (Miss.1993). Only if it reasonably appears to the trial court that, because of the lack of probative evidence on one or more of the necessary elements of the crime charged, a reasonable and fair-minded juror could only find the defendant not guilty should the trial court intercede. Horton v. State, 726 So.2d 238 (¶ 15) (Miss.Ct.App.1998). On those occasions that the trial court declines to intercede and the defendant subsequently appeals that decision, an appellate court is obligated to review the evidence in that same light and may overturn the trial court's decision only if the appellate court is convinced that the trial court was manifestly incorrect. Id. Furthermore, our Mississippi Supreme Court has held that if on appeal one convicted of a criminal offense challenges the legal sufficiency of the evidence, our authority to interfere with the jury's verdict is quite limited. Naylor v. State, 730 So.2d 561 (¶ 25) (Miss.1999). We proceed by considering all of the evidence not just that supporting the case for the prosecutionin the light most consistent with the verdict. Id. We give the prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. Id. If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required. Id. On the other hand, if there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb. Id. We hold that the evidence was more than sufficient to support the verdict.
¶ 23. Our Mississippi statute on kidnapping reads as follows:
Any person who shall without lawful authority forcibly seize and confine any other person, or shall inveigle or kidnap any other person with intent to cause such person to be secretly confined or imprisoned against his or her will....
Miss.Code Ann. § 97-3-53 (Rev.2000). The record shows that Smiley forcibly entered the home of Coleman with a shotgun in his hands and several rounds of ammunition. Smiley forced Coleman back into the house and confined Coleman and Albright in the main room while he sat there with the shotgun and smoked a cigarette. Coleman testified to the fact that she did not feel free to leave and that she was terrified, "I didn't know if I was going to die that night or not." Albright also testified that he was scared: "a man just busted in the door with a shotgun, that's plenty enough reason for me to be scared." Albright stated that he knew "for a fact" that he was not free to leave. The evidence *591 from the record showed that Smiley had in his pockets two knives, duct tape, and a cord. The trial court states that all the evidence put forth by the State, especially the duct tape and cord could certainly be inferred by the jury that Smiley had the intent to secretly confine them and imprison them against their will. The evidence in this instance is sufficient to sustain Smiley's convictions.

III.

WHETHER THE JURY INSTRUCTIONS WERE INADEQUATE TO DEFINE THE CRIME OF KIDNAPPING AND WAS THE STATEMENT BY THE PROSECUTOR IN CLOSING IMPROPER?
¶ 24. Smiley complains that the court erred by giving jury instructions which were inadequate to properly define the crime of kidnapping. However, jury instruction S-3 correctly puts forth the elements necessary to convict one for the crime of kidnapping. Based on instruction S-3 and all instructions given, the jury was properly informed.
¶ 25. The statement made by the prosecutor in closing may have not been proper, but no objection by Smiley was made at this point. Having failed to register an objection to the closing argument at the time it was made, Smiley has now conclusively waived this issue for consideration on appeal. Hayes v. State, 723 So.2d 1182, 1188 (Miss.Ct.App.1998).

IV.

WAS THE SENTENCE OF THE TRIAL JUDGE ILLEGAL IN CONTRAVENTION OF MISSISSIPPI CODE ANNOTATED § 99-19-23?
¶ 26. Smiley contends that his sentences were "illegal in contravention of Miss.Code Ann. § 99-19-23." However, since Smiley did not object to his sentences on this ground at the time that those sentences were imposed, nor at any time thereafter in the trial court, he is procedurally barred from raising this ground of objection at this date. Reed v. State, 536 So.2d 1336, 1339 (Miss.1988).
¶ 27. Smiley's specific complaint on appeal is that the trial court's sentencing order provides that his two concurrent sentences are to commence "from today." Smiley asserts that the language will deny him credit for the time he spent in jail before his trial and to which he is entitled pursuant to Miss.Code Ann. § 99-19-23 (Rev.2000). The record shows that in the notice of criminal disposition Smiley has received credit for the time in jail that he has already served. Therefore, this assignment of error lacks merit.
¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY OF CONVICTION OF COUNT I KIDNAPPING AND COUNT II KIDNAPPING AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS ON EACH COUNT, SAID SENTENCES TO BE SERVED CONCURRENTLY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO APPELLANT.
McMILLIN, C.J., KING, P.J., PAYNE, BRIDGES, LEE, IRVING, MYERS AND CHANDLER, JJ., CONCUR. SOUTHWICK, P.J., CONCURS IN RESULT ONLY.