McMILLIN, C.J.,
for the court.
¶ 1. Charlotte Jones was convicted by a Jackson County Circuit Court jury of the crime of armed robbery. On appeal, she alleges that her right to a speedy trial was denied, that improper testimony and impeachment were allowed, that a jury instruction was erroneously refused, and that the verdict was against the overwhelming weight of the evidence. We do not find merit in any of the issues. Therefore, we affirm.
Facts
¶ 2. Charlotte Jones and her husband, Willie Jones (now deceased), were involved in a real estate transaction with Kenneth and Teresa Fountain. The Joneses were to sell five acres of their land to the Fountains. They agreed on a sale price of $14,500, of which $1,300 had already been paid. Though no closing of the sale had occurred, a deed had been executed and given to the buyers.
¶ 3. There was evidence of the following events, though the proof was disputed. A few days before the robbery, Anthony Draughon entered into a scheme with Charlotte Jones, Keith Grider (Jones’ son), *1044 and Shirley Broadus (Draughon’s aunt), to rob the Fountains. Jones told Draughon that the Fountains had $13,000 for the pending real estate sale hidden somewhere in the bedroom of their house, along with the deed for the property. It was agreed that Grider would drop Draughon off at the Fountains’ home, and then Draughon would rob the Fountains and return to his aunt’s house.
¶4. On April 22, 1997, Draughon entered the Fountains’ home and walked to the bedroom, where Teresa Fountain was located. Draughon pointed a gun at her and demanded the money. Perhaps in order to deflect suspicion from those involved in the real estate transaction, he said, “Just give me the money your husband owes me for dope.... The $13,000 that your husband owes me for dope.” Fountain handed him the money, which was inside an envelope along with the warranty deed. Draughon tied her up and left the home, taking Fountain’s car keys, cash and cigarettes from her purse. He then drove off in her blue Honda Civic.
¶ 5. As Draughon was proceeding in the Fountain car, a rock was propelled by one of the tires and hit the windshield of another car. Tina Warden was driving, with Janet Jackson as a passenger. Warden drove after Draughon and caused him to stop. Warden demanded that Draughon pay for her damaged windshield. Drau-ghon took $140 from the stolen cash to pay Warden. Warden recognized Draughon and asked him if his name was Anthony. He said that it was not and gave her the money. At trial, Draughon confessed that he had recognized the woman and that in fact, she was married to one of his friends. Warden, Jackson and Teresa Fountain are sisters.
¶ 6. After paying Warden, Draughon drove to his aunt Shirley Broadus’ home. Broadus, Grider, Jones and Patsy Carpenter, Broadus’ sister, were present. Drau-ghon testified that he handed the envelope containing the money and the warranty deed to the group. The cash was divided among Draughon, Broadus, Grider and Jones. Jones retained the warranty deed. Draughon left his aunt’s house and went to pick up his girlfriend. Later on that day, Draughon went to a pet store and bought over $600 worth of pet supplies, including a ferret and a chinchilla. The receipts for these were placed into evidence at trial. Draughon was arrested later that evening. Two days later, Draughon implicated Charlotte Jones in the robbery. Jones was arrested on May 7,1997.
Discussion
I.
Speedy Trial
¶ 7. Jones asserts that the trial court erred in failing to grant her motion to dismiss based on a denial of a speedy trial. Jones was arraigned on this charge on May 12, 1998. Her trial was first scheduled for August 17, 1998. Several continuances over the following months were requested and granted. The trial finally began on January 8, 2001.
¶ 8. A statute requires that a defendant be brought to trial within 270 days after arraignment “unless good cause be shown, and a continuance duly granted by the Court.” Miss.Code Ann. § 99-17-1 (Rev. 2000). The Sixth and Fourteenth Amendments of the United States Constitution and Article 3, Section 26 of the Mississippi Constitution grant a defendant the right to a speedy trial. Because a defendant has these two separate rights to a speedy trial, we will examine each in order to determine whether there is merit to this claim.
A.
Statutory Right to a Speedy Trial
¶ 9. More than 270 days passed after arraignment until the first day of *1045 trial. Jones does not address the statutory right in any detail, and therefore the State does not respond to it. However, the record contains a detailed response by the State to the trial motion that sought dismissal based on a speedy trial violation. It contains a schedule of continuances and other motions which gave rise to the delays. The summary states that continuances duly granted caused 469 days of delay, that the several defendants caused 345 days of delay, and that only 162 days of the total time that transpired should be counted towards the 270 days within which an accused should be brought to trial.
¶ 10. The defendant does not indicate what part of this calculation might be in error. Indeed, Jones mentions the statutory issue with such brevity that the State asserted that only the constitutional issue was raised on appeal. We find no violation of the statutory right prior to the first trial.
¶ 11. A mistrial concluded the first effort to determine Jones’ guilt. Only 110 days passed until the second trial commenced. Even had the delay between the two trials been longer, the statutory right to a speedy trial would not have been implicated. The statutory right is satisfied once the defendant is brought to trial, even if that trial results in a mistrial. Only the constitutional speedy trial analysis is relevant thereafter. Handley v. State, 574 So.2d 671, 674 (Miss.1990).
B.
Constitutional Right to a Speedy Trial
¶ 12. Jones’ constitutional right to a speedy trial attached at the moment that she was accused, such as by arrest. Smith v. State, 550 So.2d 406, 408 (Miss.1989). To determine if her constitutional right to a speedy trial has been violated, certain balancing factors identified by the United States Supreme Court must be applied. Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). These factors are (1) the length of the delay; (2) the reason for the delay; (3) the defendant’s assertion of right to a speedy trial; and (4) whether the defendant has been prejudiced by the delay. Id. at 533, 92 S.Ct. 2182. All of these factors must be considered as a whole. Id.
¶ 13. Jones asserts that the length of delay from her arrest on May 9, 1997, to the date that her trial began on January 8, 2001, is evidence of a speedy trial violation. Delays of over eight months are presumptively prejudicial and satisfy the defense burden on the first factor. Smith, 550 So.2d at 408. The delay in this case was three years and eight months. The length of delay does not establish a speedy trial violation, but it is the threshold that leads to the need to analyze the remaining three Barker considerations. Wiley v. State, 582 So.2d 1008, 1012 (Miss.1991).
¶ 14. Jones attributes “political and judicial gymnastics” as the reason for the delay between the time of her arrest and the time of her initial trial. Her first court-appointed attorney, Keith Miller, was elected district attorney in 1999, effectively requiring him to withdraw from her case. From what the record reflects, between the original date of her scheduled trial, May 1998, to May of 2000, the State requested and was granted five continuances. Four of these continuances were due to the unavailability of the court, and one was due to the necessity of appointing a special prosecutor. An additional continuance was requested by Jones’ attorney, Keith Miller, who wanted a continuance because counsel’s presence was required at another court on the date that Jones’ trial was set. Two other continuances were granted to co-defendant Johnny Grider and one to co-defendant Shirley Broadus, *1046 thereby pushing back the date of Jones’ trial even more. The only continuance that can be attributed to Jones was her motion to sever the defendants, made in September of 2000.
¶ 15. Although Jones did not instigate the majority of these continuances, the State should not be penalized for these delays. There is no evidence that the requested continuances were unjustified. Continuances granted to the State, where the State has shown good cause for such a continuance, are not counted against it. Flores v. State, 574 So.2d 1314, 1318 (Miss.1990).
¶ 16. Next, we examine Jones’ assertion of right to a speedy trial. The only assertion that appears in the record is Jones’ January 2001 motion to dismiss for failure to provide a speedy trial. That was filed only weeks before the first trial and after almost the entire three-plus year delay had ended. Where a defendant first notes the delay and seeks to be discharged only when trial is about to commence, this does not amount to a prompt demand for a speedy trial. Perry v. State, 637 So.2d 871, 875 (Miss.1994).
¶ 17. The last factor to be examined is whether actual prejudice occurred because of the delay. Prejudice can occur in two ways: (1) the delay impaired the ability to defend such as by affecting the availability or recollections of witnesses, or caused the loss of other evidence; or (2) the delay has put restraints on the defendant’s liberty. Skaggs v. State, 676 So.2d 897, 901 (Miss.1996). Since Jones was apparently free on bond during this delay, it will only be necessary to determine if prejudice has occurred by impairing Jones’s ability to defend herself.
¶ 18. Jones claims that because of the nearly four-year delay in her trial, actual prejudice has occurred. She refers to a few moments in the trial where witnesses stated that they did not remember certain details of the events. Of the three specific instances Jones mentions in her brief, none of the witnesses indicated meaningful difficulty. Rather, they had trouble recalling specific details, such as the specific date that Charlotte Jones’s husband died, or the sequence of demands that Draughon made upon Teresa Fountain while robbing her.
¶ 19. Jones gives no examples of evidence being lost, witnesses becoming inaccessible, or any other indication that actual prejudice occurred because of the delay. Jones makes a vague assertion of prejudice caused by the State’s offering a key witness, Anthony Draughon, a plea bargain. The details and incentives of the plea bargain were thoroughly explored before the jury. We find nothing in the fact of this plea bargain to affect the potential prejudice arising from trial delay.
¶ 20. No prejudice was shown to have resulted from the delays in Jones’ trial. While the length of delay in Jones’ case is presumptively prejudicial, when balanced with the other Barker factors, we do not find that Jones was denied her speedy trial rights.
II.
Evidence of a Prior Conviction
¶ 21. Jones testified that on the day of the robbery, she was at her doctor’s office getting her prescription filled. Introduced into evidence was her prescription receipt and her doctor’s patient chart to confirm the date. The State sought to attack her truthfulness by producing evidence of a prior misdemeanor conviction for prescription forgery. The State reasoned that this evidence was relevant to show the defendant’s propensity for untruthfulness. By a rule of evidence, proof *1047 of a prior conviction is readily admissible to attack the credibility of a witness when the conviction involved a dishonest or false statement. M.R.E. 609(a)(2).
¶22. Jones asserts that the admission of this evidence was reversible error. When the prior conviction is of a crime that directly involves untruthfulness, such evidence is automatically admissible without the added requirement of undertaking a balancing that is required for proof of convictions of other kinds of crimes. Id.; Adams v. State, 772 So.2d 1010 (¶ 56) (Miss.2000). Forgery is the kind of crime covered by Rule 609(a)(2).
¶ 23. There was no error in the State using this prior conviction for impeachment.
III.
Jones’ Motion for Mistrial
¶24. During direct examination of Draughon, the State introduced into evidence a memorandum of understanding between Draughon and the State. The State requested that Draughon read some of its terms, in particular that Draughon was to testify to the truth during trial. The prosecutor then asked Draughon several times if he was telling the truth during his present testimony. Defense counsel objected to these questions, stating that they were bolstering the witness.
¶ 25. The court sustained the objection and conducted a hearing outside the presence of the jury on Jones’s motion for mistrial. The court overruled the motion, stating that the questions objected to “were simply some testimony about the terms of the agreement which were read, and ... there was [not] anything prejudicial with that.”
¶ 26. Since it is within a trial judge’s discretion to grant a motion for mistrial, our review of the denial of such a motion is for whether the discretion was abused. Pulphus v. State, 782 So.2d 1220 (¶ 10) (Miss.2001). The court instructed the State to refrain from conducting a word-for-word reading of the memorandum of understanding. The court also sustained the objection to asking Drau-ghon if he was testifying truthfully. No basis was found for granting a mistrial. We do not find evidence of an abuse of discretion in this ruling. Jones has not convinced us that she was prejudiced by the questions in any substantial manner such that starting the trial anew was required.
IV.
Jury Instruction
¶ 27. Jones’s request for a jury instruction that would define “reasonable doubt” was denied by the trial court. On appeal, Jones asserts that this instruction should have been granted because she believes the average juror needs to have a definition of the term.
¶28. The argument that a reasonable doubt definition is necessary has been considered and rejected in several precedents. The term “ ‘reasonable doubt’ defines itself and needs no definition by the court.” Barnes v. State, 532 So.2d 1231, 1235 (Miss.1988); see also Williams v. State, 589 So.2d 1278, 1280 (Miss.1991). The trial judge properly denied the instruction.
V.
Weight of Evidence
¶ 29. Jones asserts that the jury verdict was against the overwhelming weight of the evidence and a result of bias and prejudice by the jury. This Court will reverse a conviction on this basis only when we are certain that the verdict is so starkly opposed to the overwhelming *1048 weight of the evidence that to allow it to stand would be an unconscionable injustice. Eakes v. State, 665 So.2d 852, 872 (Miss.1995).
¶ 30. In determining whether there was an injustice of this sort, we consider all the evidence presented which supports the verdict and accept it as true. McClain v. State, 625 So.2d 774, 778 (Miss.1998). The State benefits from all reasonable inferences drawn from the evidence, since factual disputes concerning evidence are decided by the jury. Id.
¶ 31. The State produced the testimony of Kenneth and Teresa Fountain to establish that a land sale was being negotiated and that Jones was aware that the Fountains had a large sum of money for the sale at their house. Teresa Fountain’s testimony was that Jones knew the location of that money, since when Jones previously borrowed $300 she had followed Teresa into the bedroom to obtain the cash. Draughon’s testimony established the main events of the case as we have already related. Shirley Broadus’ testimony was supportive of Draughon’s story, with the exception that she denied any personal involvement with the burglary until after it was already committed. She also stated that she could not be certain whether or not Jones had conspired with Draughon for the robbery. However, her police statement had confirmed that she, Jones and Grider split the stolen money between themselves and Draughon. Gri-der’s testimony was not available at trial because he was deceased. However, the record indicates that he had pled guilty to the charges against him concerning his involvement with the robbery. Therefore, the only testimony provided to contradict the jury’s findings was from Jones herself.
¶ 32. Jones was convicted of armed robbery by being an accessory before the fact. In order to be guilty of such a charge, the defendant must do something that “will incite, encourage, or assist the actual perpetrator in the commission of the crime.” Malone v. State, 486 So.2d 360, 363 (Miss.1986). The jury found evidence to support this charge. Jones’s denials created questions of credibility for the jury to answer.
¶ 33. Upon reviewing the evidence presented in the light most favorable to the verdict, we find that the jury’s verdict was not against the overwhelming weight of the evidence.
¶ 34. THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND RESTITUTION OF $3,513 IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.
KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.