915 So.2d 527 (2005)
A.B. WRIGHT a/k/a Albert Burt Wright a/k/a Albert B. Wright, Sr. a/k/a "B. Boy Wright", Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-KA-02520-COA.
Court of Appeals of Mississippi.
November 29, 2005.
*529 William C. Trotter, Belzoni, attorney for appellant.
Office of the Attorney General by W. Daniel Hinchcliff, attorney for appellee.
Before KING, C.J., IRVING and BARNES, JJ.
BARNES, J., for the Court.
¶ 1. Albert Wright was tried and convicted in the Circuit Court of Washington County, Mississippi, for the murder of Lovie Camper. For his crime, Wright received a sentence of life in the custody of the Mississippi Department of Corrections. From his conviction, Wright timely appealed to this Court, asserting a number of errors. Finding that all of Wright's claims of error lack merit, we affirm.

SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. On the evening of Tuesday, October 24, 2000, officers from the Greenville Police Department discovered the body of Lovie Camper on a levee near the Lighthouse Point Casino in Greenville, Mississippi. The search for Camper's body was prompted by a call to the police from John Williams, who, upon discovering his van in the parking lot of the casino that morning, noticed that the van "had blood in it." Also found in the van were a broken bottle and a piece of wood which appeared to be a tray, both covered in blood. Williams testified that he had loaned the van to Camper the previous Saturday, but had not heard from her since that time. Upon receiving information from the Mississippi Crime Laboratory that bloody fingerprints found in the van belonged to Albert Wright, Chief Detective Danny Suber requested a warrant for Wright's arrest. Wright was arrested on December 7, 2000, and on May 10, 2001, he was indicted on a charge of murder. The trial court granted a total of seven continuances, four of which were filed solely by the State, and two of which were made jointly. As a result, Wright's trial did not begin until September 10, 2003, some 1,006 days after his arrest.
¶ 3. At trial, State Pathologist Dr. Stephen Hayne testified that Camper had been lethally injured by the infliction of blunt-force trauma to the head. Hayne testified that Camper's skull had been fractured, and that the force of the blows pushed the bones of Camper's forehead into the tissue of her brain, causing death. Hayne also noted the presence of non-lethal *530 slash wounds on Camper's neck. Hayne ruled Camper's death a homicide, stating that it was "readily apparent" that an object had been delivered with great force into Camper's face, causing her death. Dr. Hayne testified that either the bottle or wooden tray recovered from the van could easily have been used to inflict the fatal wounds, and that the broken bottle could have been used to slash Camper's neck.
¶ 4. A wealth of evidence adduced at trial linked Wright to Camper's death. Lisa Burchfield, an acquaintance of Wright's, testified that she saw Wright and Camper in Williams's van on the evening of Saturday, October 21, and that she subsequently witnessed Wright with blood on his clothing.[1] Burchfield testified that, in response to her inquiry as to why his clothes were bloody, Wright told her that he and Camper had gotten into a fight at a nightclub. Additionally, Jimmy Mason and Brenda Littlejohn testified that they observed Wright acting suspiciously at the levee on the afternoon of Sunday, October 22, near the location where Camper's body was eventually found.
¶ 5. Most damning to Wright, however, were the Mississippi Crime Laboratory's revelations that Wright's DNA had been found in fingernail scrapings taken from Camper's body, and that bloody fingerprints discovered in the van belonged to him. Paul Wilkerson, the State's latent fingerprint expert, testified that three fingerprints appearing on the wooden tray recovered from the van matched Wright "to the exclusion of everyone else in the world." Most notable about the fingerprints was that they were "placed there by a bloody hand," according to Wilkerson. He testified that, in his expert opinion, Wright's hand had blood on it before his fingerprints were transferred to the wooden tray.
¶ 6. At the close of the State's case in chief, Wright moved for a directed verdict, asserting that the State had failed to prove that Wright acted with malice aforethought as required by section 97-3-19 of the Mississippi Code Annotated (Rev.2000 & Supp.2005). Upon the trial judge's denial of the motion for directed verdict, Wright closed his case without putting on any proof. The jurors were provided with instructions on both murder and manslaughter, and during their deliberations, sent a note to the judge asking for "elaboration[] on the difference [between] manslaughter and murder." Without objection by the defense, the circuit judge informed the jurors that "The Court can only tell you that you have been given the Court's jury instructions which you must use in continuing your deliberations." Approximately two hours later, the jury issued a verdict finding Wright guilty of murder. Wright was promptly sentenced to life in the custody of the Mississippi Department of Corrections. After the trial, Wright filed a motion for judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. The trial court denied the motion, and Wright timely appealed to this Court.

ISSUES AND ANALYSIS

I. WHETHER THE TRIAL COURT ERRED IN REFUSING TO GRANT WRIGHT'S MOTION FOR DIRECTED VERDICT, PEREMPTORY INSTRUCTION, AND MOTION FOR JNOV, AS THE VERDICT WAS CONTRARY TO LAW.
*531 ¶ 7. Motions for directed verdict, peremptory instruction, and JNOV test the legal sufficiency of the State's evidence. Carr v. State, 911 So.2d 589, 590(¶ 5) (Miss.Ct.App.2005) (citing Hawthorne v. State, 835 So.2d 14, 21(¶ 31) (Miss.2003)). In considering whether the evidence is legally sufficient to sustain a conviction, we must ascertain whether the evidence shows "beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed." Bush v. State, 895 So.2d 836, 843-44(¶ 16) (Miss.2005) (internal quotes omitted). Viewing the evidence in the light most favorable to the prosecution, we must determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Id.
¶ 8. Wright contends that the trial court erred in refusing to grant his motion for directed verdict, peremptory instruction, and motion for JNOV because the State failed to prove an essential element of the crime of murder, namely deliberate design.[2] Specifically, Wright argues that the State put forth no evidence showing that he formed the intent to kill prior to the killing. However, the Mississippi Supreme Court has held that "an inference of intent to kill is raised through the intentional use of any instrument which, based on its manner of use, is calculated to produce death or serious bodily injury." Jones v. State, 710 So.2d 870, 878(¶ 35) (Miss.1998). Dr. Hayne's testimony makes it clear that the broken bottle and wooden tray recovered from Williams's van were instruments that could have inflicted lethal wounds upon a victim when delivered with force. A rational trier of fact could have determined that Wright directed the bottle or wooden tray at Camper in a manner likely to produce death; the severe injuries Camper suffered were a testament to the force used in the attack. Thus, looking at the evidence in the light most favorable to the prosecution, we cannot find that the State failed to prove that Wright acted with deliberate design in the killing of Camper. Wright's claim of error is without merit.

II. WHETHER THE TRIAL COURT ERRED IN REFUSING TO GRANT WRIGHT'S MOTION FOR A NEW TRIAL AS THE VERDICT OF THE JURY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 9. In contrast to a motion for JNOV, a motion for new trial challenges the weight of the evidence. When reviewing the denial of a motion for new trial based on such an objection, we will only reverse a jury verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. Bush, 895 So.2d at 844(¶ 18). In evaluating a motion for new trial, we view the evidence in the light most favorable to the verdict; accordingly, we will grant a new trial "only in exceptional cases in which the evidence preponderates heavily against the verdict." Id.
¶ 10. The evidence against Wright in this case was formidable. Wright's bloody fingerprints were found in the automobile in which Camper was killed, and Wright's *532 DNA was found under the fingernails of the deceased. Additionally, two witnesses testified that they observed him near the site where Camper's body was ultimately found. Another witness stated that she saw Wright and Camper together near the time of the murder, and that she later saw Wright walking down the street with blood on his clothes. The evidence of Wright's guilt is so substantial that a reversal of his conviction would constitute an unconscionable injustice in its own right. Wright's claim that his conviction was against the overwhelming weight of the evidence is without merit.

III. WHETHER THE TRIAL COURT ERRED IN NOT DISMISSING WRIGHT'S CASE AS HIS RIGHT TO A SPEEDY TRIAL WAS VIOLATED.
¶ 11. Wright claims that he was denied his right to a speedy trial because his trial began on September 10, 2003, a total of 1,006 days after his arrest. While Wright does not assert his statutory right to a speedy trial, see Miss.Code Ann. § 99-17-1 (Rev.2000), he bases his challenge on constitutional grounds. The sixth and fourteenth amendments to the United States Constitution and article 3, section 26 of the Mississippi Constitution of 1890 guarantee criminal defendants the right to a speedy trial. Watts v. State, 733 So.2d 214, 235(¶ 61) (Miss.1999). The right attaches at the time of the defendant's arrest, indictment, or information, whichever occurs first in time. Taylor v. State, 672 So.2d 1246, 1257 (Miss.1996). In order to determine whether a defendant's right to a speedy trial has been violated, this Court employs the four-part balancing test set forth in Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Pursuant to Barker, we must consider (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant caused by the delay. Id.; see also Taylor, 672 So.2d at 1258-62 (applying Barker). The Barker analysis is triggered by a presumptively prejudicial delay. Barker, 407 U.S. at 530, 92 S.Ct. 2182. The Mississippi Supreme Court has held that a delay of over eight months is presumptively prejudicial. Smith v. State, 550 So.2d 406, 408 (Miss.1989). No single factor is dispositive, and in weighing the factors, we look to the totality of the circumstances to determine whether the defendant's rights have been violated. Watts, 733 So.2d at 235(¶ 61).

Length of delay and the reasons for delay
¶ 12. Wright was arrested on December 7, 2000, and his trial began on September 10, 2003. A total of 1,006 days separated the two dates. While the trial court granted seven continuances of the case, three of the continuances were requested jointly. The parties filed a joint motion for continuance on July 22, 2002, and an order of continuance was issued on August 19, 2002. Joint motions were also filed on November 15, 2002, and February 4, 2003; the trial judge granted both requests. Delays caused by continuance by agreement of both parties cannot be considered in determining whether a defendant's speedy trial rights have been violated. Giles v. State, 650 So.2d 846, 850 (Miss.1995). The time from the initial joint request for continuance to the trial date was 414 days, thus reducing the time of delay attributable to the State from 1,006 days to 592 days.
¶ 13. Further, where the State has demonstrated good cause for its request for continuance, those continuances are not counted against the State. Flores v. State, 574 So.2d 1314, 1318 (Miss.1990). The State's motions for continuances in this case were predicated on the fact that *533 DNA testing at the Mississippi Crime Laboratory had not been completed. Where the cause lies with a "tentacle of the State," such as the state crime laboratory, we are hesitant to weigh the delay against the State. Manix v. State, 895 So.2d 167, 176(¶ 18) (Miss.2005). The State filed its first motion to continue on August 23, 2001, and a total of 333 days passed between that date and the date of the filing of the first joint motion for continuance.[3] Subtracting those 333 days from the earlier sum of 592 days, a total of 259 days remain attributable to the State. The remaining figure exceeds eight months and is thus presumptively prejudicial. See Smith, 550 So.2d at 408.

Defendant's assertion of the right
¶ 14. While a defendant's failure to assert in a timely manner his right to a speedy trial is not fatal to his claim of error, it most certainly weighs against him. See id. at 409. Wright asserted his right to a speedy trial for the first time in his motion for judgment notwithstanding the verdict or, in the alternative, a new trial. He concedes that this factor weighs in the State's favor.

Prejudice to the defendant
¶ 15. The United States Supreme Court has identified three interests to be considered when analyzing whether a defendant has been prejudiced by the delay in bringing the case to trial: (1) preventing oppressive pretrial incarceration, (2) minimizing anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired. Barker, 407 U.S. at 532, 92 S.Ct. 2182. The last interest is the most important and, if violated, is the most prejudicial to the defendant. Id.; see also Stark v. State, 911 So.2d 447, 452-53(¶ 28) (Miss.2005). In the present case, Wright was incarcerated for the entire period from his arrest until his trial. Thus, this factor weighs against the State. The second factor is neutral; Wright does not claim any overly burdensome anxiety or concern while incarcerated, and the State does not dispute that Wright was affected by anxiety and concern. Third, while Wright makes a general claim that his defense was prejudiced because witnesses in his case were unable to remember accurately dates and times, he cannot show that this harmed his defense. Particularly in light of the overwhelming amount of physical evidence linking him to Camper's murder, we find no reason to hold that the delay impaired Wright's defense. See id.

Conclusion
¶ 16. After analyzing and weighing the Barker factors, we conclude that Wright was not denied his constitutional right to a speedy trial. Wright's assertion of error is without merit.

IV. WHETHER THE TRIAL COURT ERRED IN REFUSING THE JURY'S REQUEST FOR FURTHER CLARIFICATION OF THE DISTINCTION BETWEEN MURDER AND MANSLAUGHTER.
¶ 17. At some point during deliberations, the jurors sent a note to the trial judge asking for clarification of the difference between murder and manslaughter. *534 After consulting with counsel for both parties, and hearing no objections to his proposed response, the judge replied with a note stating, "The Court can only tell you that you have been given the Court's jury instructions which you must use in continuing your deliberations." Wright now contends that the judge abused his discretion in failing to give the jury further instruction.
¶ 18. Wright's counsel failed to object to the Court's proposed response; thus, he is barred from raising this issue for the first time on appeal. Triplett v. City of Vicksburg, 758 So.2d 399, 401(¶ 9) (Miss. 2000). The record shows that Wright's counsel agreed with the trial judge's response: When discussing the matter with the trial judge, Wright's counsel stated on the record that "The only elaboration that we can give them is contained in the jury instructions." This issue is without merit.

V. WHETHER THE TRIAL COURT ERRED IN ALLOWING INTO EVIDENCE PHOTOGRAPHS OF THE LOCATION IN WHICH CAMPER'S BODY WAS FOUND.
¶ 19. Wright claims that the trial court erred in allowing into evidence four photographs offered by the prosecution of the area in which Camper's body was ultimately found. The photographs offered were as follows: (1) an aerial photograph of the levee, showing the location of the body in relation to the Lighthouse Point Casino; (2) a photograph of debris along the path leading to Camper's body; (3) a photograph of a grassy area with a road leading to the location in which the body was found; and (4) a photograph of a grain auger near the location where Camper's body was found. Wright objected to the introduction of the photos, arguing that they lacked probative value, that the photos were not true and faithful representation of the places they purported to represent, and that they were not properly authenticated.
¶ 20. The crux of Wright's argument is that the photographs were not accurate depictions of the areas represented because the photos were taken either significantly before or after the crime was committed. The aerial photograph of the levee, for example, was taken before the Lighthouse Point Casino was constructed; furthermore, the photos of the grassy area and of the grain auger were taken in the spring and summer of 2003, significantly after the crime had been committed. However, the record makes it clear that all of the photographs were introduced to show landmarks and the close distance between the levee and the location where the casino was eventually built. Wright is unable to show how the passage of time has made these photographs less probative of geography and distance.
¶ 21. Further, Rule 103(a) of the Mississippi Rules of Evidence states, "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." Wright generally asserts that the trial court erred in allowing the photographs into evidence, but makes no claim that the introduction of the photographs was adverse to his case. Therefore, we need not address this issue. See Johnson v. State, 908 So.2d 758, 764-65 (¶¶ 24-26) (Miss. 2005). Wright's claim of error is without merit.

VI. WHETHER THE TRIAL COURT ERRED IN ADMITTING EXPERT TESTIMONY REGARDING FINGERPRINT ANALYSIS FOR FAILING TO MEET THE DAUBERT STANDARD.
¶ 22. At trial, Wright objected to the admissibility of the testimony of Paul Wilkerson, the State's expert on fingerprint analysis. Wright argued that fingerprint *535 analysis is unreliable and that it has never been scientifically tested. Wright asks this Court to hold that Wilkerson's testimony failed to meet the requirement set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and embodied in Rule 702 of the Mississippi Rules of Evidence that expert testimony be based upon reliable principles and methods. This is a request that we are neither willing nor able to grant. The Mississippi Supreme Court has long allowed the introduction of fingerprint evidence to establish the identity of a party. See, e.g., Wilson v. State, 574 So.2d 1324, 1334 (Miss.1990); McLain v. State, 198 Miss. 831, 836, 24 So.2d 15, 16 (1945). The supreme court has time and again recognized the utility and reliability of fingerprint analysis testimony, and we are not at liberty to depart from this approach. This claim of error is without merit.

VII. WHETHER THE TRIAL COURT ERRED IN INTERRUPTING WRIGHT'S COUNSEL IN HIS CLOSING ARGUMENT, THEREBY DIMINISHING ITS EFFECTIVENESS.
¶ 23. The record shows that the attorneys for each side were granted 30 minutes apiece for closing arguments. However, twenty minutes into Wright's closing, the following exchange took place:
BY THE COURT: Attorney Trotter. Attorney Trotter.
BY MR. TROTTER [Wright's counsel]: Yes, ma'am.
BY THE COURT: I'm so sorry to interrupt, but that was 20 minutes, I'm sorry.
BY MR. TROTTER: That was 20 minutes.
BY THE COURT: 20 for Mr.  you've got 30.
BY MR. TROTTER: Thank you, ma'am. Okay.
On appeal, Wright claims that his counsel was "thrown off stride, momentarily confused, his train of thought broken" when the trial judge interrupted him during his closing argument; he asks us to find that such an interruption constitutes reversible error. While Wright cites authority supporting the proposition that a trial judge should provide the defendant ample time for closing argument, he cites no authority undergirding his assertion that a simple interruption during closing argument is reversible error. It is settled that this Court will not review issues on appeal if the party fails to cite relevant support of his or her arguments. Lambert v. Lambert, 872 So.2d 679, 682(¶ 14) (Miss.Ct.App.2003) (citing Blue v. State, 825 So.2d 709, 712(¶ 10) (Miss.2002)). This assertion of error is not properly before the Court, and is thus without merit. In closing, we note that in light of the overwhelming evidence against Wright in this case, had the interruption been error, it would have been harmless.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., BRIDGES, IRVING, CHANDLER, GRIFFIS AND ISHEE, JJ., CONCUR.
NOTES
[1] Burchfield's testimony is confusing as to whether her encounter with Wright occurred "about Tuesday morning" or "the next morning" after she had seen him with Camper, which would have been Sunday morning.
[2] Section 97-3-19(1)(a) of the Mississippi Code Annotated (Rev.2000 & Supp.2005) states that the unlawful killing of a human being without authority of law and "[w]hen done with deliberate design to effect the death of the person killed," is murder. In his brief, Wright uses the term "malice aforethought," rather than "deliberate design." While the terms are interchangeable, Jones v. State, 710 So.2d 870, 876(¶ 21) (Miss.1998), we prefer to use the term "deliberate design" for the sake of clarity.
[3] The State filed additional motions for continuance on September 18, 2001, January 7, 2002, and April 10, 2002. All of the motions were granted. Each of the motions stated that the continuance was sought because testing of DNA evidence at the Mississippi Crime Laboratory had not been completed. The implication in these requests is that the delay was attributable to a backlog at the state's crime lab, rather than to negligence on the part of the prosecution. Delay caused by such negligence would be counted against the State. See Perry v. State, 637, So.2d 871, 875 (Miss.1994).