IRVING, J.,
for the Court:
¶ 1. Pursuant to a bench trial in the County Court of Warren County, Timothy Hodnett was found guilty of hunting deer during the closed season in violation of Mississippi Code Annotated Section 49-7- *104 45(l)(f) (Rev.1999).[1] Hodnett was sentenced to (1) pay a $500 fine, (2) pay all court costs in the amount of $96 and (3) serve sixty days in jail, suspended upon a one-year good behavior period. Hodnett appealed to the Circuit Court of Warren County which affirmed the county court conviction and sentence. Feeling aggrieved, Hodnett[2] filed this appeal, alleging (1) due process rights violations, (2) insufficiency of the evidence and (3) illegal search and seizure. Finding reversible error, we reverse and render.
FACTS
¶ 2. At approximately 5:30 p.m. on September 6, 1996, which was during the closed season for deer hunting, Bobby Hodnett, a wildlife conservation officer with the Mississippi Department of Wildlife, Fisheries and Parks, was planting wheat in the Mahanna Wildlife Management area when he saw a truck belonging to his first cousin, the Appellant, coming up a nearby road, heading west toward White Line Hunting Camp. Officer Hod-nett testified during the State’s case-in-chief that about a half hour later he decided to drive down to the hunting camp to see what his cousin was doing. On the way, Officer Hodnett encountered Jim Anderson who, along with two of Anderson’s laborers, were putting fuel into a tractor. Officer Hodnett testified that he asked Anderson if he had seen Appellant go by and that Anderson replied in the affirmative, advising that Appellant was further down the road.
¶ 3. Officer Hodnett went on to testify that after talking with Anderson he proceeded down the road and came upon Appellant’s truck parked on the road. Officer Hodnett testified that he pulled the truck he was driving along side Appellant’s truck and stopped. The two vehicles were parallel to each other facing in opposite directions. There was no one in Appellant’s truck. Officer Hodnett testified that shortly thereafter, he saw Appellant’s co-defendant, Hollins, running up the embankment at the rear of Appellant’s truck. Hollins then entered Appellant’s truck and started the engine. As Hollins was about to pull away, Officer Hodnett testified that he drove his truck a little past the rear of Appellant’s truck and saw a dead deer fifteen to twenty feet down the embankment.
¶4. Officer Hodnett testified that he then instructed Hollins to turn off the truck’s engine and to step out of the truck. Officer Hodnett reached into the truck and removed the keys from the ignition. Hol-lins was asked whether he had a gun. He responded that he did not. Officer Hod-nett pulled the seat of the truck forward and saw a rifle. Officer Hodnett also discovered a box of rifle shells of the same caliber as the rifle. When Officer Hodnett questioned Hollins about the dead deer, Hollins responded that he had no knowledge of the deer. Officer Hodnett testified that the deer was partially skinned and the meat that had been hulled off was inside two plastic bags located near the body of the dead animal. A knife was also found beside the carcass. Officer Hodnett testified that, in the bed of the truck, there was, what he believed to be, fresh blood and hair from a deer. There was also a trail of blood from the bed of the truck and open tailgate to the dead animal.
¶ 5. The evidence was that the deer was killed by a rifle shot to its neck; however, *105 no one testified to having heard a rifle shot in the area, and it could not be determined where the deer had been killed. Photographs of the truck, the deer carcass, two bags of deboned deer meat and other items were put into evidence as well as the rifle and the knife found beside the carcass.
¶ 6. Officer Hodnett testified that since he was new to his job, and because he was related to Appellant, he decided to call for assistance. Wildlife Conservation Master Sergeant Donald Shropshire testified that he was contacted by a radio dispatcher and instructed to go to the assistance of Officer Hodnett. Shropshire testified that he arrived on the scene at about 6:00 p.m.
¶ 7. Shropshire testified that he was able to identify the rifle, recovered from the truck, as belonging to Appellant because he had had many occasions to inspect it when he came across Appellant on prior occasions. Shropshire further testified that he was informed by Jim Anderson that Hollins did not kill the deer and that the officers should have been looking for Appellant because Appellant killed the deer.
¶ 8. Melanie Roe, a sheriffs dispatcher, testified during the State’s case in rebuttal that the truck found at the scene was in fact registered to Appellant. Jim Anderson was also called by the State in its case in rebuttal. Anderson testified that he saw Appellant’s truck on the day in question but denied having seen Appellant. He also denied having told the conservation officers that he had seen Appellant. He further denied having told Shropshire that Anderson knew who had killed the deer. However, Anderson stated that he did tell the conservation officers, “We all know who killed that deer,” and that he meant by this statement that, “logically,” the dead deer appeared to be the work of Appellant.
ANALYSIS OF ISSUES PRESENTED

Sufficiency of the evidence.

¶ 9. Appellant argues that the verdict of the trial judge was against the overwhelming weight of the evidence. He contends the State failed to prove that he was ever present at the scene, failed to link him to the crime, and failed to prove that he killed the deer. The State contends that this issue is barred because Appellant did not raise the sufficiency of the evidence with the county court judge by way of a motion following the conclusion of the bench trial. Apparently, the issue was raised on appeal to the circuit court. We find that review of this issue is not precluded and that Appellant’s claim that the evidence was insufficient to support the verdict has merit. Consequently, we address that issue only.
¶ 10. “A challenge to the factual sufficiency of the evidence, [which alleges that] the jury’s verdict is against the overwhelming weight of the evidence, must be brought to the attention of the trial court via a motion for new trial so that the trial judge may have an opportunity to pass upon ‘[the] validity [of the allegation] before this Court is called upon to review [the matter].’ ” Smith v. State, 716 So.2d 1076, 1078-79 (Miss.1998) (citing Colson v. Sims, 220 So.2d 345, 346 n. 1 (Miss.1969); Gilmer v. Gunter, 46 So.2d 447, 448 (Miss. 1950); Jackson v. State, 423 So.2d 129, 132 (Miss.1982); Ross v. State, 603 So.2d 857, 861 (Miss.1992)). “Otherwise, the insufficiency claim is not properly preserved for appeal.” Id. (citing Medious v. State, 375 So.2d 405, 406 (Miss.1979); Maroone v. State, 317 So.2d 25, 27 (Miss.1975)). There is a recognized exception to this rule, however, when the evidence wholly fails to sustain the charge in the indictment and the record lacks evidence which *106 would support the conviction. Medious, 375 So.2d at 406; Dixon v. State, 519 So.2d 1226, 1228 (Miss.1988).
¶ 11. Appellant failed to file a motion for a new trial. However, we do not believe this failure is fatal to Appellant’s cause. The purpose of the rule requiring an appellant to first present sufficiency of the evidence claims to the trial judge before appellate review may be undertaken of a jury verdict is to ensure judicial economy and to avoid putting a trial judge in error for something he has not had an opportunity to pass on. That is not the case with a bench trial. There, the trial judge, by virtue of being the trier of fact, has, by his verdict, already ruled on the sufficiency of the evidence. Even if we were to hold that the rule applies to bench trials, we believe that review could still be had in this case pursuant to the recognized exception discussed in the preceding paragraph. We now turn to the merits of Appellant’s sufficiency argument.
¶ 12. In its brief, the State appropriately summarizes the items of evidence offered in support of Appellant’s conviction: (1) Appellant’s truck was parked near the spot where the deer carcass was found, (2) the truck had been there no more than about thirty minutes, (3) Appellant’s rifle and ammunition for that rifle were in the truck, (4) Shropshire testified that Hollins told him that Appellant had driven Hollins to the place where the truck was found, (5) Shropshire also testified that Hollins told him that Hollins did not know where Appellant was, that Appellant just disappeared (6) fresh blood and hair, believed by Hodnett to be blood and hair of a deer, were found in the bed of the truck, and (7) trails of blood led from the truck to the area where the deer carcass was found.
¶ 13. Conspicuously absent from the evidence is (a) the presence of Appellant at the scene, (b) a nexus between Appellant’s gun and the slaughtered deer, and (c) a factual connection between the slaughtered deer, the trails of blood leading from the truck, and the blood and hair found in the bed of the truck, notwithstanding Hod-nett’s suspicion that it was deer hair and blood. Further, it is equally as plausible that Hollins killed the deer as it is that Appellant was the culprit. After all, it was Hollins, not Appellant, who was caught attempting to drive away in the truck. For us, it is patently clear that this evidence is wholly insufficient to sustain Appellant’s conviction. Accordingly, we reverse and render Appellant’s conviction.
¶ 14. THE JUDGMENT OF THE CIRCUIT COURT OF WARREN COUNTY OF CONVICTION OF HUNTING DEER DURING THE CLOSED SEASON, IS HEREBY REVERSED AND RENDERED. COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE,
KING and SOUTHWICK, P.JJ., PAYNE, BRIDGES, THOMAS, and LEE, JJ., concur. McMILLIN, C.J., concurs in result only. MYERS, and CHANDLER, JJ., dissent without separate opinion.

. A co-defendant, Martin Hollins, was found not guilty.

. From this point on, Hodnett will be referred to as "Appellant” to avoid confusing him with the arresting officer, Bobby Hodnett, who happens to be his cousin.