992 So.2d 1213 (2008)
Bart UDE, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2007-KM-00268-COA.
Court of Appeals of Mississippi.
July 1, 2008.
Rehearing Denied October 21, 2008.
*1214 Bart Ude (pro se), attorney for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
Before LEE, P.J., BARNES and ISHEE, JJ.
BARNES, J., for the Court.
¶ 1. On April 12, 2005, Bart Ude was convicted in the Justice Court of Oktibbeha County of stalking. He was sentenced to serve a term of six months in the county jail, suspended for a period of two years pending good behavior and was ordered to pay all fines and court costs associated with the cause. Ude appealed the conviction to the Circuit Court of Oktibbeha County. After a bench trial, the trial judge found beyond a reasonable doubt that Ude was guilty of stalking. In addition to the penalties imposed by the justice court, Ude was banished from Oktibbeha County, Mississippi for a period of two years and copies of the order were to be provided to the Mississippi State University Police Department, Oktibbeha County Sheriff's Department, Starkville Police Department, the United States Department of Homeland Security, and the University of Tennessee Police Department. Aggrieved by the circuit court's judgment, Ude appeals, asserting numerous assignments of error, only three of which need be addressed by this Court: (1) the circuit court erred in denying him a jury trial; (2) he was denied a speedy trial in the circuit court; and (3) the State failed to prove the elements of stalking beyond a reasonable doubt. As the State confesses error with regard to the circuit court's refusal to grant Ude a jury trial, we find that the circuit court committed reversible error in this regard; therefore, we reverse the judgment of circuit court and remand this case for a jury trial.

FACTS AND PROCEDURAL HISTORY
¶ 2. In November 2003, Ude arrived in Starkville, Mississippi with the expectation of completing his Ph.D. at Mississippi State University in the Department of Agricultural and Biomedical Engineering. Given that Ude had no friends or family in the area and was without personal transportation, LaKeisha Claude, an upper-level doctoral student from his department, offered to provide Ude with rides to his classes and to complete errands such as going to the grocery store. Moreover, during the Spring semester of 2004, Claude and Ude would sometimes have lunch or dinner after class. Claude testified *1215 that there were times when she called Ude or went by his apartment, but that her actions were merely collegial in nature.
¶ 3. Around February 2004, the dynamics of the relationship between Ude and Claude changed. Ude sent flowers to Claude's home on Valentine's Day. According to Claude, she called Ude and informed him that she did not want the flowers. Claude testified that Ude then began visiting her office, which was the office that housed graduate students in the department who held research assistantship positions. Claude shared this office with Virginia Hamilton, Simon Schimm, and Yee Feng. Although Ude was a student in the department and attended some of the same classes as Claude, he did not hold a research position in the department; therefore, Claude maintained that Ude's presence in the graduate student office was not necessary.
¶ 4. Claude testified that during his frequent visits to the office, Ude would either attempt to get her attention or talk loudly to other students about her personality and character. She stated that the comments made her uncomfortable. When she informed Ude that she was uncomfortable, he initially laughed, but thereafter he became angry and violent. Claude testified that Ude got angry and yelled almost every time he came to her office, which was almost daily. She stated that on one occasion, Ude had a pizza delivered to her home without any warning. He also sent apples to her office, gave her a blood pressure monitor for her birthday, and consistently made phone calls to her home, office, and cell phone. Claude testified that as the phone calls continued, she would immediately hang up when she recognized Ude's voice. She also testified that on occasion Ude passively put his arm around her, but she made it clear that such behavior was not acceptable.
¶ 5. Claude stated that in May 2004, she filed an informal complaint with the Dean of Students, Mike White, requesting that there be no affiliation between herself and Ude. White testified that as a result of Claude's complaint, he called Ude into his office on a number of occasions, explained the university's policies, and requested that Ude have no contact with Claude. According to White, throughout those meetings Ude denied any harassment and stated, on more than one occasion, that he "did not accept" White's directive to stay away from Claude.
¶ 6. Claude testified that in July 2004, after Ude had continued to contact her, she filed a formal complaint with White regarding Ude's behavior. White testified that he subsequently called a meeting among himself, Claude, Ude, and Carson Cook, the university's affirmative action officer. During this meeting, Claude told Ude that she did not want any contact with him in any manner. According to Claude and White, Ude responded that he "would not accept" that directive, and then became so agitated and angry that he was asked to leave the meeting, eventually having to be escorted out by White and Cook. At the close of the meeting, White sent a letter to Ude restating that he was to have no contact with Claude and stating that if his directives were violated, serious consequences, including suspension from the university, would result. Claude also filed a complaint with the university police.
¶ 7. Claude testified that after the meeting, Ude's behavior continued. She stated that Ude continued to call her office at least twice a week during part of the next semester. White testified that between July and September, prompted by complaints from Claude, he continued to have conversations with Ude. According to White, Ude would either deny the allegations or claim that the university was being *1216 unfair and conspiring to keep bright African American students away from each other.
¶ 8. According to Claude, on September 21, 2004, Ude, after having called Claude's office several times that morning, came to the office where she was studying with another student. Claude testified that Ude became very upset and told the student something to the effect that he should not talk to another man's girl and then "shoved" or "moved" a chair in anger. Claude stated that she was upset and very uncomfortable; so she went across the hall to Dr. Thomas Cathcart's office to call the police, but Ude followed her into the office. Dr. Cathcart testified that Claude was anxious and upset. He stated that he requested that Ude leave, but he refused. According to Dr. Cathcart, it was not until the call was made to campus police that Ude left.
¶ 9. Claude testified that Ude's harassing behavior was very taxing, affecting her both emotionally and academically. She stated that she became unable to leave her office after a certain time of day, and she was afraid to go home because she lived alone and was apprehensive that Ude may have been near her house. Claude's fears were based on Ude's violent behavior. Claude testified that she sought counseling as a result of Ude's behavior to deal with the stress that the events were having on her daily activities.
¶ 10. Ude testified that after Claude gave him her telephone number, the two ate dinner together on more than one occasion, she called him several times, and she came to his apartment several times to pick him up. He stated that on Valentine's Day, he called her and told her he was sending her flowers, and she did not tell him not to do so. Ude denied giving Claude a birthday present, but he admitted sending pizza to her house on two occasions. He testified that Claude thanked him for the pizza on one occasion. According to Ude, if Claude had told him to leave her alone, he would have done so. He maintained that the first time he met with White was in May 2004, and he initially denied that he was told during this first meeting to stay away from Claude. However, he later testified that in May 2004, White told him that Claude did not want a "relationship" with him. He then attempted to explain to White that Claude had been to his apartment, even his bedroom, but he never had any interest in a sexual relationship with her.
¶ 11. According to Ude, he did not contact Claude by phone after May 2, 2004. With regard to the July 2004 meeting among himself, Claude, White, and Cook, Ude testified that it was he who initiated the meeting due to the fact that when Claude would greet him, he was unsure as to how to react and what type of contact was permitted. Ude admitted that White told him during the meeting not to have any further contact with Claude, but he denied that he refused to accept White's directive. He acknowledged, however, that during the July meeting, Claude told him that the relationship was over and that there was to be no further affiliation between them. Ude testified that he had no contact with Claude after the July 2004 meeting. According to Ude, he saw Claude studying with another student in a classroom on more than one occasion, but he only looked in and then walked away. Ude testified that he called the office in which Claude worked to talk to his classmates. With regard to the September 2004 incident in which Claude alleged that he shoved a chair, Ude testified that he was looking for Yee Feng, but he was not there. Ude stated that he never talked to or touched Claude, nor did he ever enter the room where she was. Ude testified *1217 that he did not enter Dr. Cathcart's office until Claude had left, and when he was told to leave the office, he did so.
¶ 12. Ude's behavior resulted in a complaint being filed in the Justice Court of Oktibbeha County. On April 12, 2005, Ude was found guilty of stalking and sentenced to serve six months in the county jail. The sentence was suspended pending two years of good behavior. Ude was also ordered to pay a fine, court costs, and restitution to Mississippi State University. Aggrieved, Ude filed a notice of appeal to the Oktibbeha County Circuit Court.
¶ 13. On January 22, 2007, the circuit court denied Ude's request for a jury trial and proceeded to conduct a bench trial. The circuit court subsequently found Ude guilty of stalking. In addition to the penalties imposed by the justice court, the circuit court banished Ude from Oktibbeha County, Mississippi for a period of two years and ordered that copies of the order be provided to the Mississippi State University Police Department, the Oktibbeha County Sheriff's Department, the Starkville Police Department, the United States Department of Homeland Security, and the University of Tennessee Police Department. Ude subsequently initiated the instant appeal.

ANALYSIS

I. Whether the circuit court erred in denying Ude a jury trial.
¶ 14. Ude alleges that the circuit court erred in denying him a jury trial. He asserts that he is constitutionally entitled to a jury trial because the maximum possible penalty for the crime of stalking is one year.
¶ 15. The United States Constitution "guarantees a jury trial to all persons charged with a `serious offense.'" Frazier v. State, 817 So.2d 663, 664(3) (Miss.Ct. App.2002). "A serious offense is one for which the defendant could be sentenced to more than six months in jail for committing." Id. (citing Blanton v. North Las Vegas, 489 U.S. 538, 542-43, 109 S.Ct. 1289, 103 L.Ed.2d 550 (1989)).
¶ 16. The circuit court addressed Ude's demand for a jury trial prior to the beginning of the bench trial. Although Ude had specifically requested a jury trial, his counsel informed the circuit court judge that, even though the maximum period of incarceration that could be imposed for stalking was one year, Ude was only entitled to a jury trial if the judge actually intended to impose imprisonment of more than six months. The judge then stated that even if Ude was found guilty beyond a reasonable doubt, he did not intend to imprison him for one year on a misdemeanor offense. Therefore, the circuit court found that Ude was not entitled to a jury trial and proceeded with a bench trial.
¶ 17. Section 97-3-107(1) of the Mississippi Code Annotated (Rev.2006) states that an individual convicted of stalking "shall be punished by imprisonment in the county jail for not more than one (1) year or by a fine of not more than One Thousand Dollars ($1,000.00), or by both such fine and imprisonment." According to Uniform Rule of Circuit and County Court 12.02(c), "[i]n appeals from justice or municipal court when the maximum possible sentence is six months or less, the case may be tried without a jury at the court's discretion." "Rule 12.02(c) thus only grants the trial court discretion to deny a defendant's request for a jury trial in cases in which the maximum possible sentence is six months or less." Skinner v. State, 809 So.2d 782, 784(4) (Miss.Ct.App.2002).
¶ 18. Therefore, as the offense of stalking is punishable by up to one year in jail, Ude had the right to a jury trial, and the circuit court had no discretion to deny him *1218 that right. The State confesses reversible error in this case, acknowledging that although Ude requested a jury trial, he did not receive one. Therefore, we find that the circuit court erred in denying Ude a jury trial and reverse the judgment of the circuit court.
¶ 19. Despite the State's concession that this case should be remanded for a jury trial, Ude contends that we should instead render a judgment of acquittal. We have reviewed all of the issues raised by Ude and find that there are two assignments of error that would possibly allow for a grant of the relief he seeks: (1) the circuit court erred in not providing him a speedy trial and (2) the State failed to prove the elements of the offense of stalking beyond a reasonable doubt. We address each in turn.

II. Whether Ude was denied the right to a speedy trial.
¶ 20. Ude contends that he was denied the right to a speedy trial in the circuit court.[1] However, Ude did not present this issue for consideration by the circuit court; rather, he raises this argument for the first time on appeal. "A trial judge will not be found in error on a matter not presented to him for decision." Smiley v. State, 798 So.2d 584, 587(¶ 7) (Miss.Ct.App. 2001) (quoting Jones v. State, 606 So.2d 1051, 1058 (Miss.1992)). Therefore, because Ude failed to raise the speedy trial issue before the circuit court, he is procedurally barred from raising the issue on appeal.

III. Whether the State failed to prove the elements of stalking beyond a reasonable doubt.
¶ 21. Ude argues that the State failed to prove the elements of stalking beyond a reasonable doubt; therefore, this Court should render a judgment acquitting him of the charge of stalking. In so arguing, Ude is challenging the sufficiency of the evidence presented by the State. The State argues that Ude is procedurally barred from challenging the sufficiency of the State's evidence due to his failure to file a motion for a judgment notwithstanding the verdict or a motion for a new trial. However, in Hodnett v. State, 788 So.2d 102, 106(¶ 11) (Miss.Ct.App.2001), this Court found that in the context of a bench trial, a defendant's failure to file a post-trial motion in the trial court challenging the sufficiency of the evidence does not prevent the defendant from challenging the sufficiency of the evidence on appeal. The Court reasoned as follows:
The purpose of the rule requiring an appellant to first present sufficiency of the evidence claims to the trial judge before appellate review may be undertaken of a jury verdict is to ensure judicial economy and to avoid putting a trial judge in error for something he has not had an opportunity to pass on. That is not the case with a bench trial. There, the trial judge, by virtue of being the trier of fact, has, by his verdict, already ruled on the sufficiency of the evidence.
Id. Therefore, as Ude's challenge to the sufficiency of the evidence is not procedurally barred, we will address the merits of his claim.
¶ 22. The standard of review to be employed when the sufficiency of the evidence is challenged is well settled:
Should the facts and inferences considered in a challenge to the sufficiency of the evidence "point in favor of the *1219 defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty," the proper remedy is for the appellate court to reverse and render. However, if a review of the evidence reveals that it is of such quality and weight that, "having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense," the evidence will be deemed to have been sufficient.
Boyd v. State, 977 So.2d 329, 336(¶ 25) (Miss.2008) (quoting Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005)) (internal citations omitted). "When reviewing a case for sufficiency of the evidence, the relevant question is whether `any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. at (¶ 26) (citation omitted). In determining there was sufficient evidence of Ude's guilt, "this Court should review the evidence in the light most favorable to the State." Id. at (¶ 28) (citing McClain v. State, 625 So.2d 774, 778 (Miss.1993)). "All credible evidence consistent with the defendant's guilt must be accepted as true, and the [S]tate is given the benefit of all favorable inferences that may be reasonably drawn from the evidence." Id.
¶ 23. Based on a thorough review of the record in this case, we find that there was sufficient evidence from which the circuit court could find Ude guilty of stalking. Mississippi Code Annotated section 97-3-107(1), which governs the offense of stalking, states:
Any person who willfully, maliciously and repeatedly follows or harasses another person, or who makes a credible threat, with the intent to place that person in reasonable fear of death or great bodily injury is guilty of the crime of stalking....
The evidence offered by the prosecution revealed that Ude repeatedly called Claude, visited her office, and sent her gifts and food despite being told numerous times that he was not to have any contact with Claude. Claude testified that when she confronted Ude about his behavior and told him that she did not wish to have any contact with him, he became angry and violent and yelled at her. Claude and White testified that Ude repeatedly refused to obey numerous specific directives that he stay away from Claude, and he stated, on more than one occasion, that he refused to "accept" the instruction that he have no contact with her. They further testified that Ude became so angry and agitated during a meeting with Claude, White, and Cook that he had to be removed from the room. Claude testified that during an unwelcome visit to her office, Ude shoved a chair when he witnessed Claude talking to another student, and then he refused to leave until the university police were called.
¶ 24. Claude testified that Ude's harassing behavior affected her both emotionally and academically. Ude's behavior forced her to seek counseling to deal with the stress these events were having on her daily activities.[2]
*1220 ¶ 25. Based on the foregoing evidence, we find that the evidence was legally sufficient to convict Ude of stalking. Therefore, we deny Ude's request to render a judgment of acquittal.

CONCLUSION
¶ 26. In summary, we find that the circuit court erred in denying Ude's request for a jury trial; accordingly, we reverse the judgment of the circuit court finding Ude guilty of stalking. Because there was sufficient evidence from which the circuit court could have found the essential elements of stalking beyond a reasonable doubt, we do not render a judgment of acquittal in favor of Ude; rather, we remand this case for a jury trial.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF OKTIBBEHA COUNTY IS REVERSED AND THIS CASE IS REMANDED FOR A NEW TRIAL. ALL COSTS OF THIS APPEAL ARE ASSESSED TO OKTIBBEHA COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] Ude states that "[t]he 270 days requirement started running when the appeal was filed" and that "the delay was the [S]tate's fault."
[2] Although the State failed to address the argument, Ude contends that he had the constitutionally protected right to make phone calls, attend classes, use facilities open to students, consult with members of the faculty, and associate with fellow students in his academic department where he was attending classes when such department was open to the public, absent any process/order prohibiting him from doing so. See Miss.Code Ann. § 97-3-107(4) (Rev.2006) ("Constitutionally protected activity is not included within the meaning of `course of conduct.'"). As support for this argument, Ude relies on the general constitutional rights to free speech and to make and enforce contracts, as well as his right to freedom of inquiry and expression as provided by Mississippi State University. We find this argument to be wholly without merit. Prior to being convicted of stalking, Ude was not prohibited from attending classes or using the university's facilities, or from generally consulting with faculty members or associating with fellow students at the university. He was, however, upon Claude's request, prohibited from having any contact with her due to his repeated refusal to heed her pleas for him to leave her alone. Ude cites no authority for the proposition that his activity in this regard is protected by the United States Constitution, nor are we aware of any such authority.