LEE, P.J.,
 

 for the Court.
 

 PROCEDURAL HISTORY
 

 ¶ 1. Loretha Pauline Logan Murray was found guilty by a Scott County Circuit Court jury of one count of credit card fraud. Murray was sentenced to serve three years in the custody of the Mississippi Department of Corrections and ordered to pay a $1,000 fine and $1,000 in restitution to the victim. Murray subsequently filed a motion for a new trial, which was denied. Murray now appeals, asserting four issues that we find appropriate to condense as follows: (1) the trial court erred in overruling two
 
 Batson
 
 objections; (2) her confession was inadmissible; and (3) the verdict is against the overwhelming weight of the evidence. Finding no error, we affirm.
 

 FACTS
 

 ¶ 2. Murray, accompanied by her sister, Leslie Lashika Lay, visited the Lackey Hospital in Forest, Mississippi, to see her podiatrist, Dr. Denver Carter. Dr. Carter’s wife, Amarylis Carter, was present at the office during Murray’s appointment. Mrs. Carter had placed her purse in Dr. Carter’s office, which the patients normally did not enter. After Murray’s appointment ended, Murray stated that Lay said to her, “I ought to get it,” and entered the office. Once the two women were in Murray’s car, Lay showed Murray the wallet. Murray called her mother, who lived in Georgia, and informed her that Lay had taken a wallet containing a credit card. According to Murray, the women were unsure of how to get cash from the card, and Murray’s mother told them they could wire the money to themselves through Western Union. Murray called Western Union and was informed that it was possible to use a credit card to wire money.
 

 
 *1280
 
 ¶ 3. At this point, Lay was holding the phone and following Western Union’s automated instructions. Murray stated that the phone was on speaker, and when a Western Union employee took over the call, Murray helped Lay answer questions. When Lay was prompted for a dollar amount to wire, Murray stated that she told her, “don’t go crazy.” Lay then said, “One thousand?,” and Murray nodded her head “yes.”
 

 ¶ 4. At some point, Dr. Carter’s wife noticed that her wallet was missing, including a Visa credit card, and notified the Forest Police Department. Mrs. Carter testified that $1,000 was removed from her bank account within two hours after her wallet was stolen. Both Dr. and Mrs. Carter testified that Murray came to their office sometime later and apologized for what had happened. Murray informed the Carters that she and her sister had disposed of the wallet.
 

 ¶ 5. Murray and Lay were arrested. Murray gave a statement to the police admitting guilt. Both women were indicted for credit card fraud, but Lay was killed in a car accident prior to trial.
 

 DISCUSSION
 

 I.
 
 BATSON
 
 ISSUE
 

 ¶ 6. In her first issue on appeal, Murray argues that the State struck two minority jurors in violation of
 
 Batson,
 
 thus denying her a fair trial. In
 
 Batson v. Kentucky,
 
 476 U.S. 79, 96, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court provided the procedure for trial courts to follow when peremptory challenges are used to remove members of an identified racial group from jury service based upon nothing more than their race. To successfully assert a
 
 Batson
 
 challenge, the following must occur:
 

 First, the defendant must establish a prima facie case of discrimination in the selection of jury members. The prosecution then has the burden of stating a racially neutral reason for the challenged strike. If the State gives a racially neutral explanation, the defendant can rebut the explanation. Finally, the trial court must make a factual finding to determine if the prosecution engaged in purposeful discrimination. If the defendant fails to rebut, the trial judge must base his decision on the reasons given by the State.
 

 Thorson v. State,
 
 721 So.2d 590, 593(¶2) (Miss.1998) (internal citations omitted).
 

 ¶ 7. This Court gives “great deference to the trial court’s finding of whether or not a peremptory challenge was race neutral.”
 
 Id.
 
 at 593(¶ 4). “[W]e will not overrule a trial court on a
 
 Batson
 
 ruling unless the record indicates that the ruling was clearly erroneous or against the overwhelming weight of the evidence.”
 
 Id.
 

 ¶ 8. After the State exercised its peremptory challenges, Murray raised a
 
 Batson
 
 challenge. Murray asserted that the State improperly struck two black jurors. The trial court asked the State to provide race-neutral reasons for striking the two potential jurors, Robert Spivey, a black male, and Charolotte Stingley, a black female. In regard to Spivey, the State noted that Spivey was an unemployed twenty-nine-year-old with an unemployed wife and a child. The trial court found this reason to be race neutral. The supreme court has stated: “[pjursuant to
 
 Batson,
 
 this Court has acknowledged that there are [an] infinite number of grounds upon which a prosecutor reasonably may peremptorily strike a juror so long as the prosecutor presents clear and reasonably specific explanations for those reasons.... Among the reasons accepted as race-neutral are ... unemployment and employ
 
 *1281
 
 ment history....”
 
 Berry v. State,
 
 802 So.2d 1033, 1046(¶ 43) (Miss.2001);
 
 see also Tyler v. State,
 
 911 So.2d 550, 554(¶ 13) (Miss.Ct.App.2005). We find the State’s reason regarding Spivey was race neutral.
 

 ¶ 9. In regard to Stingley, the State believed that she was related to a defendant whose trial was to occur the next week. The trial court found the reason to be race neutral. Murray’s trial counsel agreed that if Stingley was related, he would not object, but he asked the trial court to voir dire her. Stingley admitted that she thought she was related to that particular defendant, but it would not affect her ability to be impartial in Murray’s case. The trial court allowed the State’s peremptory challenge to stand. Striking a juror due to a family member’s criminal conviction or charge is a valid, race-neutral reason.
 
 Tanner v. State,
 
 764 So.2d 385, 394 (¶¶ 16, 18) (Miss.2000). This issue is without merit.
 

 II. ADMISSIBILITY OF CONFESSION
 

 ¶ 10. In her second issue on appeal, Murray argues that her confession was involuntary and, thus, inadmissible. Murray admitted that she signed a statement in the presence of two police officers during questioning. However, Murray claims that it was a handwritten statement on a yellow legal pad and not the typewritten confession offered by the State at trial. Murray did admit that the signature on the typewritten confession, as well as the signature on the waiver of rights form, looked like her signature. Murray’s chief contention is that the two officers questioning her told her that “it would be better for [her]” if she gave a statement. After a suppression hearing, the trial court found that the evidence was sufficient for determining Murray’s statement was voluntary.
 

 ¶ 11. For a confession to be admissible it must not have been given as a result of promises, threats, or inducements.
 
 Dancer v. State,
 
 721 So.2d 583, 587(¶ 17) (Miss.1998). The prosecution must prove beyond a reasonable doubt that the confession was made voluntarily, and it meets this burden by producing “testimony of an officer, or other persons having knowledge of the facts, that the confession was voluntarily made without any threats, coercion, or offer of reward.”
 
 Morgan v. State,
 
 681 So.2d 82, 86-87 (Miss.1996). Our standard of review regarding the admissibility of confessions is as follows: “So long as the court applies the correct legal standards, ‘we will not overturn a finding of fact made by a trial judge unless it be clearly erroneous.’ Where, on conflicting evidence, the court makes such findings this Court generally must affirm.”
 
 Alexander v. State,
 
 610 So.2d 320, 326 (Miss.1992) (internal citations omitted).
 

 ¶ 12. At the suppression hearing, both officers who questioned Murray testified. Officer Will Jones testified that he made no threats or promises to Murray. Officer Jones stated that: he read Murray her
 
 Miranda
 
 rights; she understood them; he saw her sign the waiver-of-rights form; he typed her statement; he instructed her to read her statement for any changes; and he watched her sign the statement. Officer Jones further stated that there was no yellow legal pad in the interview room. Officer Robert Roncali corroborated the testimony of Officer Jones. Officer Ronca-li stated that neither he nor Officer Jones made threats or promises to Murray. Officer Roncali testified that Murray signed the typewritten confession after being instructed to review and correct it.
 

 ¶ 13. In denying Murray’s motion to suppress, the trial court found no evidence of promises made to Murray to solicit her
 
 *1282
 
 confession. We can find no error with the trial court’s determination.
 

 III. OVERWHELMING WEIGHT OF THE EVIDENCE
 

 ¶ 14. In her last issue on appeal, Murray argues that the verdict is against the overwhelming weight of the evidence. “When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.”
 
 Bush v. State,
 
 895 So.2d 836, 844(¶ 18) (Miss.2005). When reviewing the weight of the evidence, this Court sits as a thirteenth juror.
 
 Id.
 

 ¶ 15. Murray claims that she did not actively participate in the crime with her sister; thus, she could not be found guilty. However, the evidence at trial included Murray’s signed confession, which the trial court concluded had been voluntarily given. Although she did not explicitly admit her guilt, Murray apologized to the Carters for taking Mrs. Carter’s wallet. Furthermore, Murray’s statement also indicates she was an active participant as evidenced by the assistance she provided to Lay in determining how best to get cash from the stolen credit card. Murray called Western Union, answered questions concerning the withdrawal, and agreed with Lay on the amount of money to withdraw.
 

 ¶ 16. Sitting as a thirteenth juror, we find that the verdict is not so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. This issue is without merit.
 

 ¶ 17. THE JUDGMENT OF THE SCOTT COUNTY CIRCUIT COURT OF CONVICTION OF CREDIT CARD FRAUD AND SENTENCE OF THREE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO PAY A $1,000 FINE AND $1,000 IN RESTITUTION TO THE VICTIM IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO SCOTT COUNTY.
 

 KING, C.J., MYERS, P.J., GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. IRVING, J., CONCURS IN PART AND IN THE RESULT.