KING, C.J., for the Court.
 

 ¶ 1. Christopher Drummond was convicted in the Circuit Court of Harrison County of aggravated assault and sentenced to twenty years in the custody of the Mississippi Department of Corrections (MDOC). The trial court denied Drummond’s motion for a new trial or, alternatively, for a judgment notwithstanding the verdict (JNOV). On appeal, Drummond argues the following issues: (1) the jury verdict is against the overwhelming weight of the evidence; (2) the trial court erred in allowing a "witness to testify to hearsay information; (3) he was denied effective assistance of counsel; (4) he was denied his constitutional and statutory rights to a speedy trial; and (5) he suffered cumulative error. Finding no error, we affirm.
 

 FACTS
 

 ¶ 2. On or about May 28, 2006, Doris Duckworth agreed to move some furniture and clean and varnish the floors at Melissa Durr’s home. Duckworth asked her friends, Larry Moffett and Anthony Henderson, to help her with the job. The following day, Drummond, approached Duckworth and asked the whereabouts of Moffett because Moffett had allegedly stolen his drugs (i.e. Ecstasy pills) while they were cleaning Durr’s home. Drummond, who is Durr’s brother, was allegedly asleep at Durr’s home during the time Duck-worth, Henderson, and Moffett were cleaning.
 

 ¶ 3. Duckworth testified that after talking with Drummond, she went to
 
 *509
 
 Henderson’s home and told him about Drummond’s quest to locate and kill Mof-fett for stealing his drugs. Henderson testified that because Moffett was his former roommate, Drummond came to his home after Duckworth had left, inquiring of Moffett’s whereabouts and making threats to kill Moffett for stealing his drugs.
 

 ¶ 4. On the evening of May 30, 2006, Duckworth went to Henderson’s home a second time to warn Moffett about Drum-mond’s threats. Duckworth testified that when she left Henderson’s home, she noticed a van following her. Duckworth tried to elude the van. Thinking that she had eluded the driver of the van, Duck-worth went to Moffett’s sister’s home, where Moffett now resided. When Duck-worth arrived at Moffett’s current residence, Duckworth blew her horn to summon Moffett. Moffett came out of the house to talk with Duckworth, who was sitting in her car. While Moffett was talking with Duckworth, Drummond got out of the van that had been following Duck-worth, held a brief conversation with the female passenger in Duckworth’s car, and then went behind Duckworth’s car to the driver’s side and confronted Moffett about taking his “stuff’ (i.e. drugs). Moffett testified that he told Drummond that he did not know anything about Drummond’s missing “stuff.” Moffett stated that before he could respond any further, Drummond shot him. As a result of the gunshot wound, Moffett is left permanently disabled.
 

 ¶ 5. Drummond was indicted for aggravated assault by a Harrison County grand jury during the March 2007 term. Drum-mond’s trial was set for October 15, 2007. However, on September 12, 2007, the trial court on its own motion cancelled the docket for the week of October 15, 2007, and continued those cases, including Drum-mond’s. The trial was rescheduled for December 10, 2007. On December 10, 2007, Drummond filed a motion in limine to prohibit the introduction of evidence of any other crime or alleged crime of which he had been convicted or accused. The record does not indicate that a ruling was made by the trial judge on the motion in limine.
 

 ¶ 6. On December 13, 2007, Drummond was found guilty of aggravated assault and sentenced to twenty years in the custody of the MDOC. Drummond’s post-trial motions were denied, and this appeal followed.
 
 [1]
 

 
 *510
 
 ANALYSIS
 

 I. Weight of the Evidence
 

 ¶ 7. Drummond argues that the trial court erred by denying his motion for a new trial. Drummond asserts that there is no evidence that he shot Moffett. Drummond claims that Moffett never identified him as the shooter and that any knowledge Moffett had of the shooter was based on Duckworth’s misidentification. Drummond also asserts that the State’s case against him was built on the testimony of Duckworth, a drug user whose motive was to acquire the missing drugs.
 

 ¶ 8. “When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.”
 
 Bush v. State,
 
 895 So.2d 836, 844(¶ 18) (Miss.2005). “The jury sits as the fact-finder and determines the credibility of the witnesses and gives value to the weight of the evidence against the accused.”
 
 Moss v. State,
 
 977 So.2d 1201, 1215(¶ 36) (Miss. Ct.App.2007).
 

 ¶ 9. In this case, the jury’s verdict is consistent with the weight of the evidence. Henderson and Duckworth testified that Drummond approached them prior to the shooting inquiring as to Moffett’s whereabouts and threatening to kill Moffett because he allegedly had taken Drummond’s drugs. Duckworth testified that she recalled Drummond getting out of the van that had been following her and going to the passenger side of the car she was driving. Duckworth stated that Drum-mond then came to the driver’s side of the car, asked Moffett the whereabouts of his pills, and when Moffett could or would not answer, Drummond shot him. Although Moffett could not initially identify Drum-mond as the man who had shot him, Mof-fett did testify that before the gunman shot him, the man stated that Moffett had taken his “stuff.” Lt. Robert Curry of the Gulfport Police Department testified that when he questioned Moffett at the hospital regarding the identity of the man who had shot him, Moffett was not able to give him the name of the man, but Moffett stated that it was a black man wearing a white shirt who lived on Stewart Avenue at the north end, the second house from the right, which was the location of Durr’s home. Detective Chris Lagenbach testified that he showed Duckworth a photographic lineup that had been constructed by Detective Lynette Garriga, and Duck-worth identified Drummond as the shooter. Despite the testimony of several of the State’s witnesses as to Drummond’s guilt, Drummond’s theory of defense was that he was innocent. However, Drum-mond rested without calling any witnesses or presenting any evidence.
 

 ¶ 10. In this case, the jury considered the evidence and returned a verdict of guilty. Reviewing the record, we find that allowing the verdict to stand will not sanction an unconscionable injustice; therefore, we find that this issue is without merit.
 

 II. Hearsay Testimony
 

 ¶ 11. Drummond argues that the trial court erred in allowing Moffett to present hearsay testimony. Drummond asserts that Moffett testified that he could not identify the shooter by name, but Mof-fett was allowed to testify that Duckworth told him who had shot him. “The standard of review for [either] the admission or exclusion of evidence is abuse of discretion.”
 
 Walls v. State,
 
 928 So.2d 922, 927(¶ 12) (Miss.Ct.App.2006).
 

 ¶ 12. The testimony, which Drummond alleges to be hearsay, occurred during the
 
 *511
 
 State’s case-in-chief. That dialogue is as follows:
 

 Q. If you recall, Mr. Moffett. If you don’t recall, that’s okay.
 

 A. No, I don’t recall.
 

 Q. You don’t remember?
 

 A. What was the question again, sir?
 

 Q. I was asking you if you remember telling the policeman anything about where the person responsible for your shooting you had lived, where he stayed.
 

 A. I think I said something about he stayed on Stewart Avenue I think.
 

 Q. Did you know the person that shot you?
 

 A. I’ve heard of his name, you know, but, no, I’ve never seen the boy before in my life.
 

 Q. As far as at the time you got shot—
 

 A. Did I know who did it?
 

 Q. Yes, sir.
 

 A. No, I couldn’t tell.
 

 Q. Today if you saw any faces, would you know who the person was?
 

 A. Right now, sir, I couldn’t even tell you, you know what I mean, to be honest with you, I couldn’t tell you who it was, you know, because she said who shot me. But I never [seen] the boy before in my life.
 

 Q. I want to ask if your answers just reflect what you know from your own observations and not what anybody else has told you. As of today, you don’t know the actual person who shot you, do you?
 

 A. No, sir.
 

 ¶ 18. This issue is procedurally barred on appeal as Drummond failed to object. “This Court has repeatedly held that if no contemporaneous objection is made, the error, if any, is waived.”
 
 Morris v. State,
 
 963 So.2d 1170, 1177(¶ 26) (Miss.Ct.App.2007) (citations and internal quotations omitted). “The contemporaneous-objection rule is in place to enable the trial court to correct an error with proper instructions to the jury whenever possible.”
 
 Id.
 
 Because it was not raised at the trial level, we find that this issue is procedurally barred from our appellate review.
 

 III. Ineffective Assistance of Counsel
 

 ¶ 14. Drummond contends that defense counsel’s failure to object when the State was attempting to elicit hearsay testimony from the victim amounted to ineffective assistance of counsel. Drummond also argues that defense counsel was ineffective because counsel never attempted to impeach Moffett with his prior testimony. This Court does not generally consider an ineffective-assistance-of-counsel claim on direct appeal.
 

 ¶ 15. The Mississippi Supreme Court has stated that:
 

 It is unusual for this [c]ourt to consider a claim of ineffective assistance of counsel when the claim is made on direct appeal. This is because we are limited to the trial court record in our review of the claim[,] and there is usually insufficient evidence within the record to evaluate the claim. The Mississippi Supreme Court has stated that, where the record cannot support an ineffective assistance of counsel claim on direct appeal, the appropriate conclusion is to deny relief, preserving the defendant’s right to argue the same issue through a petition for post-conviction relief. This Court will rule on the merits on the rare occasions where (1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.
 

 
 *512
 

 Wilcher v. State,
 
 863 So.2d 776, 825 (¶ 171) (Miss.2003) (internal citations and quotations omitted). The record does not affirmatively indicate that Drummond suffered denial of effective assistance of counsel of constitutional dimensions, and the parties have not stipulated that the record was adequate to allow the appellate court to make a finding without considering the finding of facts by the trial judge. Thus, we decline to address this issue without prejudice to Drummond’s right to seek post-conviction relief, if he so chooses.
 

 IV. Constitutional and Statutory Rights to a Speedy Trial
 

 ¶ 16. For the first time on appeal, Drummond contends that his constitutional and statutory rights to a speedy trial were violated. “A trial judge will not be found in error on a matter not presented to him for decision.”
 
 Ude v. State,
 
 992 So.2d 1213, 1218(¶ 20) (Miss.Ct.App.2008) (quoting
 
 Smiley v. State,
 
 798 So.2d 584, 587(¶ 7) (Miss.Ct.App.2001)). Because Drummond failed to raise these issues at trial or in his post-trial motions, he is procedurally barred from arguing them on appeal.
 

 V. Cumulative Error
 

 ¶ 17. Drummond asserts that the cumulative effect of each error acted to deprive him of his constitutional right to a fair trial. Having found no merit to any of the specific errors alleged by Drummond, this Court, accordingly, finds no cumulative error.
 

 ¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
 

 LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR.
 

 [1]
 

 . Drummond was represented at trial by Harrison County Public Defender, Glenn F. Rish-el, Jr. Rishel perfected Drummond's appeal and filed a motion which allowed Drummond to appeal as an indigent. Rishel then filed a motion to withdraw as appellate counsel and asked this Court to substitute the Office of Indigent Appeals (OIA) as appellate counsel. By order dated July 2, 2008, we allowed Rish-el to withdraw and directed that Attorney George T. Holmes of the OIA be substituted as counsel for Drummond. OIA Director Leslie S. Lee also filed an appearance form on behalf of Drummond. Holmes filed a brief on Drummond’s behalf. However, Drummond wanted no part of being represented by his appointed appellate counsel. On July 17, 2008, he filed a motion to strike the Appellant’s brief filed on his behalf by OIA, staling that he wanted to proceed pro se and that he was never consulted about the appointment of Holmes as his attorney. Further, he stated that Holmes did not consult with him in preparing the brief and that the brief filed by OIA did not raise the issues he wanted to raise on appeal. He asked this Court to allow him to proceed pro se and to strike the OIA brief of the Appellant. By order dated July 30, 2008, this Court granted Drummond's motion and allowed him to proceed pro se, allowed Lee and Holmes to withdraw as counsel, struck the OIA brief, and ordered the clerk of the court to set a new briefing schedule in order for Drummond to file his pro se brief of the Appellant, which he did October 24, 2008.