BARNES, J.,
for the Court:
¶ 1. Dennis Cosby was convicted of the murder of his wife, Wendy Cosby, and sentenced to life in the custody of the Mississippi Department of Corrections (MDOC). He appeals claiming jurisdiction and venue were improper and challenging the legal sufficiency and weight of the evidence. Finding no error, we affirm.
SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. On February 10, 2008, Brandon Hodges, a criminal investigator for Talla-hatchie County, Mississippi, was informed that a body had been found in the Talla-hatchie River. Upon arriving at the area where the body had been recovered, Investigator Hodges noted that the decomposed body was that of an adult white female. An autopsy later revealed the adult female died from a stab wound to the left lung, and the manner of death was homicide. While there was evidence of cocaine use, the cocaine was at a nontoxic level. The victim was wearing a wedding band. Investigator Hodges contacted surrounding counties to determine whether any adult white females had been reported missing. However, he was unable to determine the identity of the deceased female at that time.
¶ 3. Five months later, on July 10, 2008, Deputy Mark Whitten with the Panola County Sheriffs Department contacted Investigator Hodges, informing him that Wendy had been reported missing by her sister, Sandy Ealy. Investigator Hodges visited Cosby, who identified the wedding ring found on the body as belonging to his wife, Wendy. The couple had been married approximately five years and had two young children born of the marriage. Investigator Hodges noted that Cosby appeared to be very nervous. Cosby said the last time that he saw Wendy was on November 24, 2007. He stated she had gotten angry at him because he would not give her money, and that she took some clothes and left the home. Cosby claimed that the last time he saw her, she was walking up the road. According to Cosby, it was not unusual for Wendy to disappear for a few days at a time as she had a substance-abuse problem.
*164 ¶ 4. Investigator Hodges obtained DNA samples from the children, and the deceased female was positively identified as Wendy. Law enforcement asked Cosby to give a recorded statement. He reiterated his previous version of events — that Wendy had become mad at him and walked out. However, Investigator Hodges and Tim Douglas, an agent with the Mississippi Bureau of Investigation, later learned that, on December 5, 2007, Cosby had contacted the Social Security Administration and had Wendy’s disability check sent to him as a survivor. Thus, at a second interview on July 30, 2008, Cosby was read a Miranda warning and questioned further by Investigator Hodges and Deputy Whitten. Cosby amended his previous story and stated that late in the evening, on November 24, 2007, he and Wendy had a physical altercation over money. Cosby said that Wendy began hitting and scratching him; in response, he hit Wendy on the top of her head with his fist, and the blow “knocked her out.” He loaded the couple’s two children into his truck, and put Wendy’s unconscious body in the back of the truck. He said that she had a “peaceful look like she was asleep,” and she was still breathing. He claimed he thought “maybe she’ll wake up and bang on the truck.” Cosby drove to Paducah Wells Road, which is located in Tallahatchie County, and stopped on a concrete bridge. When Cosby could not get Wendy to wake up, he dropped her body over the side of the bridge into the river below. He said he could not tell if she was alive or dead. After Cosby threw Wendy off the bridge, he heard “a clunk like a thong or thud.” Cosby never contacted the police. However, a few days later, he contacted the Drug Task Force because there were drugs in Wendy’s van. Cosby told them that Wendy was gone. They told him to contact the sheriffs department, but Cosby never filled out any paperwork or followed up with law enforcement.
¶5. After this second interview, Cosby was charged with murder, and a jury trial was held on August 8-4, 2009. Testifying at trial, Cosby again changed his story of what had happened on November 24, 2007. He reiterated that Wendy was angry because she was unable to obtain money to get gas for her vehicle, and that the two had a physical altercation. However, he claimed that she never lost consciousness when he hit her; rather, she voluntarily got into the truck with him and the children. Cosby testified that she just wanted them to take an impromptu trip somewhere, but he reminded her that they did not have enough gas or money. After riding around a bit more, Cosby claimed he slowed the vehicle down near Paducah Wells Road, Wendy turned to him and said, “I’ll show you, you S.B.,” and she jumped out of the car and disappeared into the darkness. He assumed she had “jumped over the bridge” and “committed suicide.” Cosby contended that his previous version of the facts from the second interview was merely what the investigators wanted him to say, and they pressured him to make those statements.
¶ 6. A jury in the Panola County Circuit Court convicted Cosby of murder, and he was sentenced by the circuit court to life in the custody of the MDOC. Cosby filed a motion for a new trial or, in the alternative, a judgment notwithstanding the verdict (JNOV), which the circuit court summarily denied. Cosby timely filed his notice of appeal, and we now consider the merits of his appeal.
DISCUSSION
I. Whether jurisdiction or venue was proper.
¶ 7. Cosby asserts that Wendy’s death occurred in the First Judicial Dis *165 trict of Tallahatchie County, Mississippi; therefore, the Panola County Circuit Court of the Second Judicial District had no jurisdiction to consider the case, and the judgment should be dismissed. As jurisdiction is a question of law, we apply a de novo standard of review in determining “whether jurisdiction over a particular matter is proper[.]” Winding v. State, 908 So.2d 163, 165 (¶ 8) (Miss.Ct.App.2005) (citing Sanderson Farms, Inc. v. Gatlin, 848 So.2d 828, 841 (¶ 38) (Miss.2003)). “[Wjhen two crimes have occurred as one continual event in whole or in part in different counties, jurisdiction is proper in the county in which prosecution is first begun.” Id. at 166 (¶ 12) (citing Stubbs v. State, 845 So.2d 656, 671 (¶ 59) (Miss.2003)). This holding is based on Mississippi Code Annotated section 99-11-19 (Rev.2007), which states that:
When an offense is committed partly in one county and partly in another, or where the acts, effects, means, or agency occur in whole or in part in different counties, the jurisdiction shall be in either county in which said offense was commenced, prosecuted, or consummated, where prosecution shall be first begun.
Thus, if there exists sufficient evidence that a portion of the crime occurred in the county where the trial is being held, “then the evidence of venue is sufficient.” Hill v. State, 797 So.2d 914, 916 (¶ 12) (Miss.2001).
¶ 8. As the circuit judge noted, if the only version of the facts were those presented by Cosby at trial, there might be merit to Cosby’s jurisdictional argument. However, in his second interview, Cosby confessed that he hit Wendy, rendering her unconscious, at their home in Panola County, Mississippi, and that he took Wendy across the county line and dumped her into the river. This series of actions constituted a continuous event, which resulted in Wendy’s death. See e.g., Thorson v. State, 653 So.2d 876, 895 (Miss.1994) (defendant subject to prosecution in either of the county’s judicial districts where the abduction of the victim was in the first judicial district but the victim’s death occurred in the second judicial district). This version of the facts was relied upon by the State in seeking its indictment, and the evidence was sufficient to establish that the crime originated in Panola County. See McBride v. State, 934 So.2d 1033, 1035 (¶ 10) (Miss.Ct.App.2006) (if the evidence is sufficient “to lead a reasonable trier of fact to conclude that part or all of the crime occurred in the county where the case is being tried, then evidence of venue is sufficient”) (citing Hill, 797 So.2d at 916 (¶ 12)). Accordingly, we find the Panola County Circuit Court had jurisdiction over the offense, and this issue is without merit.
II. Whether the circuit court erred in denying Cosby’s motion for a JNOV or his motion for new trial.
¶ 9. “A motion for a JNOV challenges the legal sufficiency of the evidence.” Parker v. State, 20 So.3d 702, 708 (¶ 25) (Miss.Ct.App.2009) (citing Terrell v. State, 952 So.2d 998, 1004 (¶ 23) (Miss.Ct.App.2006)). In reviewing the denial of a motion for a JNOV, we give the State “the benefit of all favorable inferences that may be reasonably drawn from the evidence.” Fannings v. State, 997 So.2d 953, 961 (¶ 26) (Miss.Ct.App.2008) (citing McClain v. State, 625 So.2d 774, 778 (Miss.1993)). “All credible evidence consistent with the defendant’s guilt will be accepted as true.” Id. This Court will only reverse if “evidence of one or more of the elements of the charged offense is such that ‘reasonable and fair minded jurors could only find the accused not guilty.’ ” Id. (quoting Haw *166 thorne v. State, 835 So.2d 14, 21 (¶ 31) (Miss.2003)).
¶ 10. However, “a motion for a new trial challenges the weight of the evidence.” Liddell v. State, 33 So.3d 524, 534 (¶ 34) (Miss.Ct.App.2010) (citation omitted). We review a circuit court’s denial of a motion for a new trial under an abuse-of-discretion standard. Id. Evidence is to be viewed “in the light most favorable to the verdict.” Sneed v. State, 31 So.3d 33, 43 (¶33) (Miss.Ct.App.2009) (citing Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005)). “The jury sits as the fact-finder and determines the credibility of the witnesses and gives value to the weight of the evidence against the accused.” Drummond v. State, 33 So.3d 507, 510 (¶ 8) (Miss.Ct.App.2009) (quoting Moss v. State, 977 So.2d 1201, 1215 (¶ 36) (Miss.Ct.App.2007)). Only when the verdict “is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice” will it be disturbed upon appeal. Id. (quoting Bush, 895 So.2d at 844 (¶ 18)). Therefore, this Court’s task, in reviewing the weight of the evidence, is to sit as a thirteenth juror. Murray v. State, 19 So.3d 1278, 1282 (¶ 14) (Miss.Ct.App.2009) (citing Bush, 895 So.2d at 844 (¶ 18)).
¶ 11. Cosby concedes that he presented several contradictory versions of the events surrounding his wife’s death. However, he claims that his second interview showed he was acting in self-defense when he struck Wendy on the head. Further, he submits that the State could not prove where or when Wendy died and that the State failed to prove that he had any intent to murder Wendy.
¶ 12. First, the State was not required to submit evidence of the precise location or time of Wendy’s death in order to prove that Cosby committed all of the elements of the crime for which he was charged. Cosby was convicted under Mississippi Code Annotated section 97-3-19(l)(a) (Rev.2006), which states: “[t]he killing of a human being without the authority of law by any means or in any manner shall be murder ... [w]hen done with deliberate design to effect the death of the person killed, or of any human being[.]” Thus, the State merely had to provide credible evidence that Wendy was killed and that Cosby possessed a “deliberate design” to cause Wendy’s death “without the authority of law.” At trial, the forensics expert testified the cause of Wendy’s death was a stab wound to the chest. Admittedly, there was no evidence that Cosby stabbed Wendy; however, there was credible evidence Cosby took deliberate action to effectuate Wendy’s death. Cosby told law enforcement that he took Wendy’s unconscious body and dropped it over a bridge into the river below, and he heard her body hit something.
¶ 13. As to intent, Cosby admitted he threw Wendy into the river. However, Cosby claimed he had no intent of throwing Wendy in the river; his intent was just to “hide” her. “[IIntent is typically a jury issue, which will not be disturbed by the reviewing court as long as the record supports the jury’s finding of fact.” Sneed, 31 So.3d at 44 (¶ 36) (citing Boyd v. State, 977 So.2d 329, 335-36 (¶23) (Miss.2008)). This Court has held that “deliberate design to kill a person may be formed very quickly, and perhaps only moments before the act of consummating the intent.” Id. at 42 (¶ 26) (quoting Brown v. State, 965 So.2d 1023, 1030 (¶28) (Miss.2007)).
¶ 14. Furthermore, Cosby’s claim that he had no intent is merely another example of the numerous inconsistent statements issued by Cosby regarding the *167 events of November 24, 2007. For instance, during the same interview where he admitted throwing Wendy into the river, he also made obvious contradictory statements, which law enforcement immediately noted:
MARK WHITTEN: But you personally is your ... as her husband did not contact the Sheriff Department and report her missing is that right[?]
DENNIS COSBY: No[,] not at that time[.]
[[Image here]]
Not, not to report her missing cause I had gotten a phone call about the ... somebody had seen her....
MARK WHITTEN: Yeah but you but Dennis you knew that was impossible cause you put her in a body of water[.] I mean you, you knew that was impossible!;.]
DENNIS COSBY: Well I mean that, that’s, that’s true too but I’m saying that person that, that I guess that was just ah an answer I wanted to hear[.]
MARK WHITTEN: But although you knew that was impossible!;.]
DENNIS COSBY: Yeah[,] yes I did[.]
[[Image here]]
MARK WHITTEN: Okay so you knew she wasn’t coming back home[.] I mean you knew that[?]
DENNIS COSBY: Well[,] yes sir[.]
Cosby admitted at trial that he had lied to law enforcement. When questioned about what he told Investigator Hodges on the first visit to identify the wedding band, Cosby testified: “I was just panicking. I didn’t know what to tell him.... I guess I told them a lie.”
¶ 15. Our supreme court has held that “[f]actual disputes are properly resolved by the jury and do not mandate a new trial.” McNeal v. State, 617 So.2d 999, 1009 (Miss.1993). The jury, as the fact-finder, was able to consider Cosby’s contradictory statements, which cast doubt on the credibility of his testimony regarding intent. Therefore, we cannot find any error in the jury’s finding that Cosby’s act, throwing Wendy’s body over the bridge, was an intentional act designed to effect Wendy’s death.
¶ 16. Additionally, evidence showed Cosby had a financial motive to kill Wendy. He testified that Wendy was spending approximately one thousand dollars per month, presumably on illegal drugs. Shortly after her disappearance, Cosby had her social-security disability income converted to him as a survivor, presumably to provide for their children.
¶ 17. As to Cosby’s claim that he acted in self-defense, the circuit judge observed that there was “no testimony that [Cosby] feared bodily injury or that he had to do anything to ward off severe personal injury to himself or anyone else.” There is testimony that Wendy was the one who initiated the physical altercation and that Cosby struck her in response to her attack. However, for a self-defense claim to be valid, a defendant must have acted “in response to an urgent actual threat or on a reasonable belief that such threat [was] actual or imminent.” Johnson v. State, 29 So.3d 738, 746 (¶ 24) (Miss.2009) (citation omitted). According to Cosby, in his second interview, Wendy was knocked unconscious by his initial blow to her head; therefore, any actual or imminent threat from Wendy was eliminated while still at the home. Cosby’s throwing Wendy’s unconscious body from the bridge was not in any way a response to an actual or perceived threat from Wendy. Consequently, we find no merit to Cosby’s claim of self-defense.
*168 ¶ 18. We find that the evidence was legally sufficient and affirm the circuit court’s denial of Cosby’s motion for a JNOV. Furthermore, weighing the evidence in the light most favorable to the verdict, we find the overwhelming weight of the evidence supported the verdict. Accordingly, we find that the circuit court’s denial of Cosby’s motion for a new trial was not an abuse of discretion, and this issue is without merit.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF PANOLA COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PANO-LA COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ISHEE, CARLTON AND MAXWELL, JJ., CONCUR. ROBERTS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.